**GUNDERLAND MARINE SUPPLY, INC., Appellant,**

v.

**Julius BRAY, Appellee.**

**No. 1311.**

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1978.

Rehearing Denied Sept. 21, 1978.

Allan L. Potter, Potter & Potter, Corpus Christi, for appellant.

Richard W. Crews, Jr., Sorrell, Anderson & Sorrell, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is a suit to recover damages for an alleged breach of an implied warranty in connection with the sale of a Bayliner Cabin Cruiser. Suit was filed by Gunderland Marine Supply, Inc. (Gunderland) against Julius Bray (Bray) on June 4, 1976. The jury answered all issues favorably to Bray, and judgment was rendered that Gunderland take nothing by its suit. Gunderland has appealed.

The jury, in response to the two special issues submitted, found: Bray did not impliedly warrant "that title conveyed shall be good in Plaintiff Gunderland Marine Supply, Inc." in the sale of the boat (Special Issue 1); Bray did not impliedly warrant that "title transfer shall be rightful to Plaintiff Gunderland Marine Supply, Inc." in the sale of the boat (Special Issue 2). Gunderland filed a motion for new trial and a motion for judgment non obstante veredicto, both of which were overruled.

Gunderland attacks the findings by the jury by "no evidence", "factually insufficient evidence" and "against the great weight and preponderance of the evidence" points. It further contends that the trial court erred in overruling its motion for judgment non obstante veredicto in that there was no specific language in any written instrument pertaining to the sale of the boat in question, nor was there any evidence of any circumstances incidental to the sale which constituted notice to Gunderland that a) Bray did not claim title in himself, or b) that he was purporting to sell only such right or title as he or a third person may have had in the boat. Complaint is also made of jury misconduct.

We first consider Gunderland's "no evidence" points. In disposing of those points, we view the evidence in its most favorable light in support of the jury's findings, and consider only the evidence which supports those findings and reject all evidence and permissible inferences contrary thereto. *Miller v. Riata Cadillac Company*, 517 S.W.2d 773 (Tex.Sup.1974).

It was stipulated that the Bayliner boat, the boat in question, was a stolen boat at all times material to this suit, and that neither Gunderland nor Bray knew that it was stolen until long after the transaction hereinafter set out had been completed. It was further stipulated that Gunderland, in the event Bray was held liable, would be entitled to recover $8,000.00 as damages for breach of warranty.

Gunderland is a dealer in new and used power boats and outboard motorboats. It also sells boats owned by third parties under brokerage agreements. In September, 1974, the boat here involved, a 25-foot Bayliner Cabin Cruiser, was located in Gunderland's boat storage yard under a brokerage agreement with Mr. George A. Breckenridge, the ostensible owner thereof. Under the brokerage agreement, Breckenridge listed the boat on September 17, 1974 with Gunderland for 30 days. The sales price for the boat and its trailer was $12,000.00. In the event Gunderland sold the boat, it would be paid a 10% commission on the sales price. Bray visited the yard on several occasions, inspected the boat and talked to Mr. Vic Lakatos, Gunderland's store manager, about buying it. About 30 or 35 days after the boat had been listed with Gunderland for sale, Breckenridge removed the boat from the yard. Breckenridge later sold the boat to Bray on December 11, 1974, for $5,000.00 cash. The trailer was not included in the sale.

In late 1974 or early 1975, Bray began negotiating with Gunderland for a 28-foot Silverton boat by trading-in the Bayliner boat, which he had previously purchased from Breckenridge. Lakatos went to Bray's home where the Bayliner boat was located, and examined it. A sales agreement was signed on January 20, 1975, whereby it was agreed: Gunderland would sell the Silverton boat to Bray for $20,700.00, and would accept the Bayliner boat as a trade-in; Bray would be allowed $7,270.00 on the trade-in. The Silverton boat was sold and delivered to Bray; the Bayliner boat was accepted by Gunderland as a trade-in; Bray paid Gunderland $14,040.00 in cash, which included $540.00 sales tax.

After the Bayliner boat had been traded in, Gunderland refurbished it, and sold it to Mr. Walter Mertz for $8,000.00 cash. It was later discovered that it had been stolen from its lawful owner (in Colorado) before it was placed with Gunderland by Breckenridge under the aforesaid brokerage agreement. The boat was picked up (from Mertz) by the Texas Parks and Wildlife Department on October 17, 1975. Gunderland then refunded the purchase price ($8,000.00) to Mertz. On November 10, 1975, Gunderland made a written demand upon Bray for payment of $8,000.00. Bray refused to pay, and this suit was subsequently filed.

In connection with the sale of the Bayliner boat by Breckenridge to Bray, Breckenridge executed a bill of sale which contained the following language:

"I do further state that the undersigned is the legal and lawful owner of the above described vehicle . . . ."

In addition, Breckenridge endorsed over to Bray a "blue card" on the boat, theretofore issued to him by the Parks and Wildlife Department. The "blue card" is not evidence of title but is merely evidence that the boat has been registered with the Department. The requirement for the issuance thereof attaches only when the boat is placed in the water. The "blue card" merely represents compliance with the regulations promulgated by the Department. Gunderland, as a boat dealer, was not required to register the boat with the Department.

Lakatos testified that when a boat is delivered to Gunderland's under a brokerage agreement, title to the boat is not examined by Gunderland, and a prospective buyer is always told that someone other than Gunderland owns the boat. That testimony was not disputed. Where an offer to purchase a brokered boat is made, Gunderland then submits the offer to the owner, and if a sale is made, it is Gunderland's practice to see that a "blue card" is furnished the purchaser, and that the owner executes and delivers a bill of sale to the purchaser.

Gunderland was not involved in the sale of the Bayliner boat to Bray by Breckenridge. Bray testified, without objection, that Breckenridge told him that he bought the boat from a dealer in Florida, and that he (Breckenridge) had "a warranty card" with it, and that the card was in the boat when he traded it to Gunderland. However, Bray further stated that he did not check the title to the boat, and, in answer to the following questions propounded to him, said:

"Q   Did you ever inquire of Mr. Breckenridge if he had any type of certificate of title or anything from Florida?

A   No sir. All the boats I had any dealings with, all you needed was owner's card.

Q   Did you ever inquire if he had a bill of sale?

A   No, sir, I did not."

Breckenridge did not testify at the trial. Lakatos was not asked about the "warranty card". Florida law on the subject, if any, was not introduced in evidence, and there was no stipulation made as to such law.

In connection with the consummation of the sale of the Silverton boat, Bray delivered the bill of sale on the Bayliner boat which he had received from Breckenridge to Gunderland. At the same time, he also delivered the "blue card" which Breckenridge had "endorsed" over to him.

At the time of the transactions involved in this case, there was no certificate of title act or title registration law in effect dealing with titles to motor boats. That was changed by the 65th Legislature, effective September 1, 1977. See Tex. Parks and Wildlife Code § 31.045 (Supp.1978).

Bray did not execute and deliver a bill of sale on the Bayliner boat to Gunderland. The only instrument in writing concerning the "trade-in" was the sales agreement covering the boat. Since Bray did not expressly warrant the title to the Bayliner boat, the issue to be determined is whether or not he impliedly warranted title under the relevant provisions of Tex. Bus. & Comm. Code Ann. § 2.312 (1968).[1]

■ In essence, Gunderland contends that there is neither "special language" nor are there any circumstances in the record which exclude or modify the statutory requirement imposed by Subsection (a) of the above mentioned section of the Code which provides for "Warranty of Title" on the Bayliner boat. This is disputed by Bray, who asserts that the facts in the record and circumstances surrounding the sale demonstrate conclusively, or in the alternative, present fact issues to be determined by the jury, that he did not impliedly warrant title to the Bayliner boat. Bray's position is based primarily on inferences drawn from the following undisputed facts: 1) Gunderland did not require a bill of sale from him; 2) Gunderland had possession of the boat under a brokerage agreement prior to the sale; 3) Gunderland would have required Breckenridge to give him (Bray) a bill of sale had the boat been sold to him under the brokerage agreement; and 4) Title was not discussed. We do not agree. The facts relied on by Bray are not facts which show

that the warranty provided by Subsection (a) of § 2.312 of the Code, was modified or excluded, nor do those facts authorize such an inference.

There was no legal requirement at the time the Bayliner boat was traded to Gunderland that it require a bill of sale from Bray. The fact that Gunderland had possession of the boat under the brokerage agreement prior to the trade is immaterial to any issue here presented. The fact that Gunderland would have required Breckenridge to have given Bray a bill of sale had the Bayliner boat been sold to Bray under the brokerage agreement has no probative value in determining whether the warranty was modified or excluded under Subsection (b). Bray did not purchase the boat while the brokerage agreement was in force, and what Gunderland might have required of Breckenridge had Bray purchased the boat under the brokerage agreement is not before us in this appeal. Moreover, Breckenridge did execute a bill of sale wherein he warranted title when he sold the boat to Bray. Gunderland was not required to discuss title to the boat.

■ Under the provisions of Tex. Bus. & Comm. Code Ann. § 2.304 (1968), a trade-in of personal property as part of the purchase price of other personal property is a sale. Here, the trade-in of the Bayliner boat on the Silverton boat constituted a sale. Pursuant to the clear language of § 2.312 of the Code, Bray, as the seller of the Bayliner boat, where he did not expressly warrant the title thereto, nevertheless impliedly warranted the title thereto *unless* such warranty was excluded or modified in accordance with Subsection (b) thereof. The burden was on Bray to show

1. "§ 2.312. Warranty of Title and Against Infringement; Buyer's Obligation Against Infringement

(a) Subject to Subsection (b) there is in a contract for sale warranty by the seller that (1) the title conveyed shall be good, and its transfer rightful; and
(2) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.

(b) A warranty under Subsection (a) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have."

\* \* \* \* \* \*

by evidence of probative value that the implied warranty was modified or excluded when the trade (sale) was made. He did not meet that burden.

There is no evidence of any "specific language" which excluded or modified the warranty provided by Subsection (a) of § 2.312 of the Code. There is no evidence of any circumstances which gave Gunderland "reason to know" that Bray did not claim title in himself, or purported to sell only the right or title which he or some third person had in the boat.

Applying Subsections (a) and (b) of § 2.312 of the Code to the undisputed facts disclosed by the record, and after carefully reviewing the evidence and permissible inferences most favorable to Bray, as we are required to do, we hold: 1) Bray impliedly warranted that title to the Bayliner boat shall be good in Gunderland; 2) Bray further impliedly warranted that the title transfer shall be rightful to Gunderland; and 3) there is no evidence which modifies or excludes an implied warranty of title. Gunderland's points 1, 2, 3, 4, 7 and 8, its no evidence points, are sustained.

We further hold that the trial court erred in overruling Gunderland's motion for judgment non obstante veredicto. We see no reason for further discussion of the evidence. Gunderland's points 11 and 12 are sustained.

In view of the disposition which we make of this appeal, it is not necessary that we discuss or rule on Gunderland's remaining points.

The judgment of the trial court is reversed and judgment is here rendered that Gunderland recover of and from Bray the sum of $8,000.00, together with interest thereon at the rate of 9% per annum from July 15, 1977, the date judgment was signed, until paid, and for all court costs.

REVERSED and RENDERED.