Israel MARTIN, Plaintiff and Appellant,

v.

MELLAND'S INC., Defendant and Appellee.

Civ. No. 9603.

Supreme Court of North Dakota.

July 12, 1979.

Chapman & Chapman, Bismarck, for plaintiff and appellant, argued by Daniel J. Chapman, Bismarck.

Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, for defendant and appellee, argued by Gerald W. Jukkala, Jamestown.

ERICKSTAD, Chief Justice.

The narrow issue on this appeal is who should bear the loss of a truck and an attached haystack mover that was destroyed by fire while in the possession of the plaintiff, Israel Martin (Martin), but after certificate of title had been delivered to the defendant, Melland's Inc. (Melland's). The destroyed haymoving unit was to be used as a trade-in for a new haymoving unit that Martin ultimately purchased from Melland's. Martin appeals from a district court judgment dated September 28, 1978, that dismissed his action on the merits after it found that at the time of its destruction Martin was the owner of the unit pursuant to Section 41–02–46(2), N.D.C.C. (Section 2–401 U.C.C.)[1]. We hold that Section 41–

---

1. "41–02–46. (2–401) *Passing of title—Reservation for security—Limited application of this section.*—Each provision of this chapter with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. *In so far as situations are not covered by the other provisions of this chapter and matters concerning title become material the following rules apply:*

1. Title to goods cannot pass under a contract for sale prior to their identification to the contract (section 41–02–49), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the chapter on Secured Transactions (chapter 41–09), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

2. Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading

02–46(2), N.D.C.C., is inapplicable to this case, but we affirm the district court judgment on the grounds that risk of loss had not passed to Melland's pursuant to Section 41–02–57, N.D.C.C. (Section 2–509 U.C.C.)[2].

On June 11, 1974, Martin entered into a written agreement with Melland's, a farm implement dealer, to purchase a truck and attached haystack mover for the total purchase price of $35,389. Martin was given a trade-in allowance of $17,389 on his old unit, leaving a balance owing of $18,000 plus sales tax of $720 or a total balance of $18,720. The agreement provided that Martin "mail or bring title" to the old unit to Melland's "this week". Martin mailed the certificate of title to Melland's pursuant to the agreement, but he was allowed to retain the use and possession of the old unit "until they had the new one ready." The new unit was not expected to be ready for two to three months because it required certain modifications. During this interim period, Melland's performed minor repairs to the trade-in unit on two occasions without charging Martin for the repairs.

Fire destroyed the truck and the haymoving unit in early August, 1974, while Martin was moving hay. The parties did not have any agreement regarding insurance or risk of loss on the the unit and Martin's insurance on the trade-in unit had lapsed. Melland's refused Martin's demand for his new unit and Martin brought this suit. The parties subsequently entered into an agreement by which Martin purchased the new unit, but they reserved their rights in any lawsuit arising out of the prior incident.

The district court found "that although the Plaintiff [Martin] executed the title to the . . . [haymoving unit], he did not relinquish possession of the same and therefore the Plaintiff was the owner of said truck at the time the fire occurred pursuant to Section 41–02–46 of Subsection 2 [Subsection 2 of Section 41–02–46] of the North Dakota Century Code."

Martin argues that the district court erroneously applied Section 41–02–46(2), N.D.C.C. [§ 2–401 U.C.C.], regarding passage of title, to this case and that Section 41–02–57 [§ 2–509 U.C.C.], which deals with risk of loss in the absence of breach, should have been applied instead. Martin argues further that title (apparently pursuant to Section 41–02–46(1), N.D.C.C.) and risk of loss passed to Melland's and the property was then merely bailed back to Martin who held it as a bailee. Martin submits that this is supported by the fact that Melland's performed minor repairs on the old unit follow-

a. if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at *the destination, title passes to the buyer* at the time and place of shipment; but

b. if the contract requires delivery at destination, title passes on tender there." § 41–02–46(1), (2), N.D.C.C.

2. "41–02–57. (2–509) *Risk of loss in the absence of breach.*—1. Where the contract requires or authorizes the seller to ship the goods by carrier

   a. if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier even though the shipment is under reservation (section 41–02–53); but

   b. if it does require him to deliver them at a particular destination and the goods are there duly tendered while in the possession of the carrier, the risk of loss passes to the buyer when the goods are there duly so tendered as to enable the buyer to take delivery.

2. Where the goods are held by a bailee to be delivered without being moved, the risk of loss passes to the buyer

   a. on his receipt of a negotiable document of title covering the goods; or

   b. on acknowledgement by the bailee of the buyer's right to possession of the goods; or

   c. after his receipt of a nonnegotiable document of title or other written direction to deliver, as provided in subsection 4 b of section 41–02–51.

3. In any case not within subsection 1 or 2, the risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant; otherwise the risk passes to the buyer on tender of delivery.

4. The provisions of this section are subject to contrary agreement of the parties and to the provisions of this chapter on sale on approval (section 41–02–44) and on effect of breach on risk of loss (section 41–02–58)." § 41–02–57, N.D.C.C.

ing the passage of title without charging Martin for the repairs. Melland's responds that Section 41–02–46(2), N.D.C.C., governs this case and that the district court's determination of the issue should be affirmed.

One of the hallmarks of the pre-Code law of sales was its emphasis on the concept of title. The location of title was used to determine, among other things, risk of loss, insurable interest, place and time for measuring damages, and the applicable law in an interstate transaction. This single title or "lump" title concept proved unsatisfactory because of the different policy considerations involved in each of the situations that title was made to govern. Furthermore, the concept of single title did not reflect modern commercial practices, i. e. although the single title concept worked well for "cash-on-the-barrelhead sales", the introduction of deferred payments, security agreements, financing from third parties, or delivery by carrier required a fluid concept of title with bits and pieces held by all parties to the transaction.

Thus the concept of title under the U.C.C. is of decreased importance. The official comment to Section 2–101 U.C.C. [§ 41–02–01, N.D.C.C.] provides in part:

"The arrangement of the present Article is in terms of contract for sale and the various steps of its performance. The legal consequences are stated as following directly from the contract and action taken under it without resorting to the idea of when property or title passed or was to pass as being the determining factor. The purpose is to avoid making practical issues between practical men turn upon the location of an intangible something, the passing of which no man can prove by evidence and to substitute for such abstractions proof of words and actions of a tangible character." Uniform Commercial Code (U.L.A.) § 2–101.

Section 41–02–46, N.D.C.C. (§ 2–401 U.C. C.), which the district court applied in this case, provides in relevant part:

"Each provision of this chapter with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this chapter and matters concerning title become material the following rules apply . . ."

Section 41–02–57, N.D.C.C. (§ 2–509 U.C. C.), is an "other provision of this chapter" and is applicable to this case without regard to the location of title. Comment one to Section 2–509 U.C.C. [§ 41–02–57, N.D.C.C.] provides that "the underlying theory of these sections on risk of loss is the adoption of the contractual approach rather than an arbitrary shifting of the risk with the 'property' in the goods."

■ The position that the Code has taken, divorcing the question of risk of loss from a determination of title, is summed up by Professor Nordstrom in his hornbook on sales:

"No longer is the question of title of any importance in determining whether a buyer or a seller bears the risk of loss. It is true that the person with title will also (and incidentally) often bear the risk that the goods may be destroyed or lost; but the seller may have title and the buyer the risk, or the seller may have the risk and the buyer the title. In short, title is not a relevant consideration in deciding whether the risk has shifted to the buyer." R. Nordstrom, Handbook of the Law of Sales, 393 (1970).

See also Comment, Risk of Loss Under Section 2509 of the California Uniform Commercial Code, 20 U.C.L.A.L.Rev. 1352 (1973); Annot., 66 A.L.R.3d 145 [Who Bears Risk of Loss of Goods under U.C.C. §§ 2–509, 2–510] (1975); 3A Bender's U.C.C. Service, Duesenberg & King, Sales and Bulk Transfers §§ 8.01–8.07 (Mathew Bender & Co. 1978); T. Quinn, Uniform Commercial Code Commentary and Law Digest, 2–296—2–303 (1978); Note, Title Theory and the Uniform Commercial Code, 30 N.D. L.Rev. 211 (1954). The Code's position on risk of loss and title is also discussed in the case law, see e. g. Caudle v. Sherrard Motor Company, 525 S.W.2d 238, 241 (Tex.Civ.

App.1975); *White Motor Corp. v. Bronx-Westchester White Trucks, Inc.*, 18 U.C.C. Rep.Serv. 382 (N.Y.Sup.Ct.1975).

The fact that risk of loss questions are now answered by Section 41–02–57, N.D. C.C. [§ 2–509 U.C.C.], rather than a title analysis and the confusion that this change has engendered is illustrated by *Park County Implement Co. v. Craig*, 397 P.2d 800 (Wyo.1964). In *Craig*, the seller of a truck sued the buyer for the purchase price after the truck had been destroyed in a fire on the buyer's premises. The buyer took delivery of the truck from the seller's place of business and drove the vehicle to his shop where he began to work on it. Fire subsequently destroyed the truck and the buyer argued that because the seller had not delivered a certificate of title to the vehicle, title had not passed, and the seller should bear the loss. The Wyoming Court rejected the buyer's argument but did so on the grounds that the buyer had accepted the goods pursuant to Section 2–606 U.C.C. [§ 41–02–69, N.D.C.C.] and therefore would be obligated to pay the contract rate as provided in Section 2–607 U.C.C. [§ 41–02–70, N.D.C.C.]. The case is discussed in 3A Bender's U.C.C. Service, *supra* at Section 8.04, n 2, as follows:

"That the rights and obligations of the parties did not depend upon title under

the Code was noted by the court, but then, instead of going to the risk of loss sections (§§ 2–509 and 2–510), it went to Sections 2–606 and 2–607 and stated that the buyer was liable for accepted goods. Section 2–509(3) provides that risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant, and since that is what occurred in this case, it would have been sufficient to dispose of the case. While the result is correct, the court seemed to be groping for a substitute concept to that of title, and settled upon sections dealing with acceptance, completely overlooking the fact that the Code specifically provides for the type of problem which the court had at hand."

*See also Conte v. Styli*, 26 Mass.App. 73 (1963), where the court determined a risk of loss problem on the basis of a title analysis, *i. e.* Section 2–401 U.C.C. Although the result was correct, the reasoning was inappropriate. The case is also discussed in 3A Bender's U.C.C. Service, *supra* at Section 8.04.

Thus, the question in this case is not answered by a determination of the location of title,[3] but by the risk of loss provisions in Section 41–02–57, N.D.C.C. (§ 2–509 U.C.C.). Before addressing the risk of loss question in conjunction with Section 41–02–57, N.D.C.C. (§ 2–509 U.C.

---

**3.** While the role of title has been diminished under the U.C.C., it has not been entirely excluded. Section 41–02–46, N.D.C.C. (§ 2–401 U.C.C.), provides the rules for passage of title when title is relevant. Generally, it is still necessary to consider title in two broad contexts:

(1) For purposes outside the law of sales, *e. g.* criminal law, taxation, and public regulation; and (2) where the final question is ownership, not merely some incident of the sale, *e. g.* liability insurance coverage. *See* Comment, *Risk of Loss Under Section 2509 of the California Uniform Commercial Code*, 20 U.C.L.A. L.Rev. 1352, 1369 (1973). *Motors Ins. Corp. v. Safeco Ins. Co. of Am.*, 412 S.W.2d 584 (Ky. 1967) illustrates when Section 2–401 regarding passage of title is relevant. In this case, an automobile purchased on trade was delivered, along with the keys, to the buyer, and was damaged while in buyer's possession, but before the full price had been paid and the title certificate transferred. The buyer's insurer denied liability on the ground that the car was

still "owned" by the seller, and was therefore covered by the seller's policy in its inventory, which covered all goods "owned" or "held for sale". The case is discussed at 3A Bender's U.C.C. Service, *supra* at § 8.06, n 11:

"To determine whether the seller's policy covered the loss, the court had to refer to the title rules of Section 2–401, and in doing so, it said that title passed at the time and place of delivery. 'The fact that the title papers had not been delivered,' the court reasoned, 'did not require that [the seller] still be considered the "owner" within the meaning of the insurance policy.' Thus, for purposes of determining whether the car was still covered by the seller's policy, reference to title was necessary because of the policy term, 'owned'. If the case had been only an issue of risk of loss as between the parties, reference to Section 2–509 would have been dispositive of the case. Since the seller was a merchant, and since the goods had been received by the buyer, risk of loss would have been on the buyer under Section 2–509(3). . . ."

C.), it is necessary to determine the posture of the parties with regard to the trade-in unit, *i. e.* who is the buyer and the seller and how are the responsibilities allocated. It is clear that a barter or trade-in is considered a sale and is therefore subject to the Uniform Commercial Code. *Gunderland Marine Supply, Inc. v. Bray*, 570 S.W.2d 542, 545 (Tex.Civ.App.1978); T. Quinn, Uniform Commercial Code Commentary and Law Digest, 2–108 (1978). It is also clear that the party who owns the trade-in is considered the seller. Section 41–02–21, N.D.C.C. (§ 2–304 U.C.C.), provides that the "price can be made payable in money or otherwise. If it is payable in whole or in part in goods each party is a seller of the goods which he is to transfer." *See also Home Indemnity Co. v. Twin City Fire Insurance Co.*, 474 F.2d 1081 (7th Cir. 1973); *Gunderland Marine Supply, Inc. v. Bray, supra* at 545.

Martin argues that he had already sold the trade-in unit to Melland's and, although he retained possession, he did so in the capacity of a bailee (apparently pursuant to Section 41–02–57(2), N.D.C.C. [§ 2–509(2) U.C.C.]). White and Summers in their hornbook on the Uniform Commercial Code argue that the seller who retains possession should not be considered bailee within Section 2–509:

"The most common circumstance under which subsection (2) will be applied is that in which the goods are in the hands of a professional bailee (for instance, a warehouseman) and the seller passes a negotiable or a non-negotiable document of title covering the goods to the buyer. That case is simple enough. One question remains, however. Can the seller ever be a 'bailee' as the word is used in subsection (2)? The facts in a pre-Code case, *Courtin v. Sharp*, well illustrate the problem. There seller had reached an agreement with buyer for the sale of a colt. The parties had agreed that the seller would hold the colt for the buyer and, depending upon the terms of the payment of the price, would or would not charge him a fee for stabling the colt. The colt was killed without any fault on the part of the seller, and the seller sued the buyer for the purchase price. In such a case the seller could certainly argue that he was a bailee and that risk had passed since he had acknowledged the buyer's 'right' to possession of goods under (2)(b). The case would be a particularly appealing one for that argument if the seller were receiving payment from the buyer for the boarding of the horse.

"We believe that such an interpretation of the word bailee should be rejected by the courts, and except in circumstances which we cannot now conceive, a seller should not ever be regarded as a bailee. To allow sellers in possession of goods already sold to argue that they are bailees and that the risk of loss in such cases is governed by subsection (2) would undermine one of the basic policies of the Code's risk of loss scheme. As we have pointed out, the draftsmen intended to leave the risk on the seller in many circumstances in which the risk would have jumped to the buyer under prior law. The theory was that a seller with possession should have the burden of taking care of the goods and is more likely to insure them against loss.

"If we accept such sellers' arguments, that is, that they are bailees under subsection (2) because of their possession of the goods sold or because of a clause in the sale's agreement, we will be back where we started from, for in bailee cases the risk jumps under (2)(b) on his 'acknowledgment' of the buyer's right to possession. By hypothesis our seller has acknowledged the buyer's right and is simply holding the goods at buyer's disposal. Thus, to accomplish the draftsmen's purpose and leave risk on the seller in possession, we believe that one should find only non-sellers to be 'bailees' as that term is used in 2–509(2). Notwithstanding the fact that a seller retains possession of goods already sold and that he has a term in his sale's contract which characterizes him as a 'bailee', we would argue that he is not a bailee for the purposes of subsection (2) of 2–509 and would analyze

his situation under subsection (1) or subsection (3) of 2–509." J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code, 144–45 (1972).

The courts that have addressed this issue have agreed with White and Summers. *See e. g. Caudle v. Sherrard Motor Company, supra* at 239–240; *Galbraith v. American Motorhome Corp.*, 14 Wash.App. 754, 545 P.2d 561 (1976).

It is undisputed that the contract did not require or authorize shipment by carrier pursuant to Section 41–02–57(1), N.D.C.C.; therefore, the residue section, subsection 3, is applicable:

> "In any case not within subsection 1 or 2, the risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant; otherwise the risk passes to the buyer on tender of delivery."

Martin admits that he is not a merchant; therefore, it is necessary to determine if Martin tendered delivery of the trade-in unit to Melland's. Tender is defined in Section 41–02–51(1), N.D.C.C. (§ 2–503 U.C. C.), as follows:

> "41–02–51. (2–503) *Manner of seller's tender of delivery.*—1. Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery. The manner, time and place for tender are determined by the agreement and this chapter, and in particular
>
> a. tender must be at a reasonable hour, and if it is of goods they must be kept available for the period reasonably necessary to enable the buyer to take possession; but
>
> b. unless otherwise agreed the buyer must furnish facilities reasonably suited to the receipt of the goods."

It is clear that the trade-in unit was not tendered to Melland's in this case. The parties agreed that Martin would keep the old unit "until they had the new one ready." This point is illustrated by the pre-Code case of *Republic Supply Co. v. Ledbetter*, 434 P.2d 251 (Okl.1967), and a commenta-

tor's discussion of it in 6C Bender's U.C.C. Reporter-Digest, § 2–509 (1978). In *Ledbetter*, the parties entered into a contract for the sale of a quantity of oil pipes. The seller agreed to store the goods for the buyer until the buyer needed them. The goods were subsequently lost while stored by the seller. The court held that under pre-Code law title to the pipe did not pass (because the pipe was not, in a deliverable state) and risk of loss was on the seller. The commentator, in discussing the case, notes that the result under the Code would be the same but for different reasons: "Section 2–509(3) provides that the seller must bear the risk of loss until delivery is tendered." Because the seller agreed to hold the pipes until the buyer needed them, there was no tender.

In *Pacific Indemnity Co. v. McDermott Brothers Co.*, 336 F.Supp. 963 (M.D.Pa. 1971), a Federal District Court in Pennsylvania was faced with a similar situation, but the issue of risk of loss was not raised. McDermott Brothers entered into an agreement to purchase an airplane from Continental Aircraft Sales. As part of the sale, Continental was to take McDermott's old airplane as a trade-in and before delivery modify the new airplane to meet McDermott's specifications. Because Continental was not in a financial position to undertake the costly modifications of the new airplane without assistance, McDermott agreed to transfer title to the old aircraft prior to the delivery of the new one. Under the agreement, McDermott was to retain possession of the old airplane for use in its business until modification of the new plane was completed. The old airplane was damaged while McDermott was flying it. The Pennsylvania Federal Court was faced with the issue of whether or not an alleged oral promise by Continental to insure the trade-in airplane constituted an oral modification of the terms of the contract of sale. In discussing the case, a commentator made the following relevant statement:

> "It should be noted that since the purchaser (the party trading in the older craft) had retained possession, it might

follow that risk would not be deemed to have passed as to the retained airplane, since there was neither delivery nor a tender of delivery shown." 3A Bender's U.C.C. Service, Duesenberg & King, Sales and Bulk Transfers, § 8.03, n 51 (Mathew Bender & Co. 1978).

*See also Deitch v. Shamash*, 56 Misc.2d 875, 290 N.Y.S.2d 137 (1968); *Mitchell v. Highway Equip. Co.*, 21 U.C.C.Rep.Serv. 1034 (Pa.Com.Pl.1976).

We hold that Martin did not tender delivery of the trade-in truck and haystack mover to Melland's pursuant to Section 41–02–57, N.D.C.C. (§ 2–509 U.C.C.); consequently, Martin must bear the loss.[4]

We affirm the district court judgment.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.

4. In so holding, we note that subsection 4 of Section 41–02–57, N.D.C.C., allows the parties to agree as to who should bear the risk of loss and to obtain insurance accordingly. This approach is strongly recommended by the commentators. *See e. g.* T. Quinn, *supra* at 2–299.