817 F.2d 340
 3 UCC Rep.Serv.2d 1354, 22 Fed. R. Evid. Serv. 1688
 JERRY PARKS EQUIPMENT COMPANY, Plaintiff-Appellee Cross Appellant,
and
Leger & Sanders, P.C., Cross Appellant,
v.
SOUTHEAST EQUIPMENT CO., INC., Defendant-Third Party
Plaintiff Appellant-Cross Appellee,
and
Molony, North & Hanewinckel and Stilwell, Bedinger & Cain,
Appellants-Cross Appellees,
v.
SOUTHWEST EQUIPMENT CO., INC., Third Party Defendant-Appellee.
 No. 86-2528
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 May 22, 1987.
Rehearing Denied June 24, 1987.
 Ernest A. Burguieres, III, Molony, North & Hanewinckel, Metairie, La., for Southeast Equipment.
 Harry Herzog, Thomas C. Sanders, Houston, Tex., for Jerry Parks Equipment Co.
 Before POLITZ, WILLIAMS, and JONES, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 Southeast Equipment Company, Inc. appeals an adverse judgment, entered after a bench trial, awarding Jerry Parks Equipment Company damages for breach of warranty in a sales contract and attorneys' fees. Southeast complains that the court erred in: (1) failing to rule on pending discovery motions; (2) striking testimony of a witness who violated the sequestration rule; (3) assessing damages; and (4) awarding attorneys' fees. Plaintiff cross-appealed, seeking additional attorneys' fees for trial and appeal and sanctions for a frivolous appeal. We modify and as modified affirm the judgment of the district court on the merits. We deny sanctions for a frivolous appeal. Further, we vacate the award of attorneys' fees and remand for reconsideration and resetting of those fees, including fees for services rendered by plaintiff's counsel at trial and on appeal.
 
 Background
 
 2
 Jerry Parks Equipment Company is a Texas corporation engaged in the business of buying and selling heavy equipment. In 1982, its president, Jerry Parks, contacted Tom Benigno, president of Southeast Equipment Company, a Louisiana corporation in the same business, and made known his desire to purchase a certain Caterpillar 930 located in Houston. The equipment was either owned or being brokered by Arthur Uresti, who had some affiliation with Southwest Equipment Company. Parks did not choose to deal with Uresti so arrangements were made for Southeast to purchase the machine and then sell it to Parks for a $2,000 profit. Parks made arrangements for the subsequent sale to Budd Leasing Company with an immediate lease to Leonard Strawther.
 
 
 3
 The transactions commenced. Southeast purchased from Uresti for $32,000 and sold to Parks for $34,000. Parks resold to Budd for $42,000 and Strawther took possession under a lease. Parks noted a discrepancy between the identification number listed in the documents and the number stamped on the machine. All matters were momentarily put on hold until Parks concluded that the error was merely clerical. The transactions were then consummated. Unfortunately the error was not merely clerical. One month later the police seized the Caterpillar 930, which proved to be stolen.
 
 
 4
 Parks furnished a substitute tractor to Strawther and filed suit against Southeast for breach of warranty of title. Southeast filed a third-party demand against Southwest; Uresti; Strawther; Budd; Gary Wagner, a Budd employee; and Jerry Parks. Southwest was never served.
 
 
 5
 Acting pursuant to section 2-312 of the Uniform Commercial Code, as found in Tex.Bus. & Com.Code Ann. Sec. 2.312, the trial court awarded Parks judgment against Southeast for a total of $83,271.98, allotted $31,271.98 for the cost of a substitute tractor, $21,000 for loss of rental value of the substitute, and $31,000 for attorneys' fees. The amount of attorneys' fees was stipulated by counsel as the amount accrued up to the time of trial. Southeast was given judgment over against Uresti, but the demands against all other third-party defendants were dismissed. The court invoked Fed.R.Civ.P. 11 and imposed $5,500 in sanctions against Southeast and its attorneys for the filing of what it found to be frivolous third-party demands.
 
 Analysis
 
 6
 1. Pending discovery motions.
 
 
 7
 Southeast complains that the court failed to rule on pending discovery motions. That complaint lacks merit. On the day of trial, before the first witness was called, the court and counsel had a colloquy about each pending discovery dispute. The matters were resolved. The record does not reflect that Southeast protested going to trial after this colloquy or that it suffered any prejudice by doing so. Discovery matters are entrusted to the trial judge's sound discretion. We perceive no abuse of that discretion. See Day v. Allstate Insurance Co., 788 F.2d 1110 (5th Cir.1986).
 
 
 8
 2. Violation of sequestration order.
 
 
 9
 Southeast invoked the sequestration rule, Fed.R.Evid. 615, and all nonparty witnesses were excluded from the courtroom. William Dann, a former Parks employee called by Southeast, testified on direct examination and was cross-examined by counsel for Parks. Thereafter, during cross-examination by counsel for third-party defendants, Dann admitted that he had joined Benigno and Southeast's attorneys for lunch and at that time had discussed the case, albeit briefly. On motion by counsel for third-party defendants, Dann's testimony was stricken.
 
 
 10
 The lunch table conversation by the president of Southeast, its counsel, and Dann violated the sequestration rule, which Southeast itself had invoked. Southeast challenges the court's decision to strike Dann's testimony as a sanction for the infraction. The trial court could have imposed lesser sanctions; indeed, lesser sanctions would appear more in order. But we are not prepared to say that in striking the testimony the trial court so clearly abused its discretion in selecting the remedy for violation of Rule 615 as to warrant reversal. United States v. Eastwood, 489 F.2d 818 (5th Cir.1973).
 
 
 11
 Even were we to agree that the trial court erred it would avail Southeast naught, for Southeast has not and cannot show prejudice because of the expunging of Dann's testimony. After reviewing that testimony we understand why Parks's counsel sought neither to challenge nor impeach it. Dann's testimony reflected that Parks was an innocent purchaser, one typically protected by the Texas courts. See, e.g., Saenz Motors v. Big H. Auto Auction, Inc., 653 S.W.2d 521, 525 (Tex.Ct.App.1983), aff'd, 665 S.W.2d 756 (Tex.1984); Gunderland Marine Supply, Inc. v. Bray, 570 S.W.2d 542 (Tex.Civ.App.1978); Jamison v. Sockwell, 405 S.W.2d 618 (Tex.Civ.App.1966). Dann's suggestion that Parks should have checked the identification number more closely does not change Southeast's liability under Sec. 2.312 because it did not tend to show actual knowledge or bad faith on the part of Parks.
 
 
 12
 3. Damages.
 
 
 13
 Southeast's challenge to the award of damages is meritorious. In determining the measure of damages, Texas follows the Uniform Commercial Code:
 
 
 14
 The general principle governing damages for breach of contract is that the complaining party is entitled to recover the amount necessary to put him in as good a position as if the contract had been performed. In a case involving a sale of personal property the measure of damages is the difference between the cash market value of the article as delivered and what its value would have been if it had been as warranted. In the absence of other proof of market value as warranted, the price agreed upon between the parties may be taken as the market value of that for which the parties contracted.... If the article has no value at all, then the amount paid may be recovered.
 
 
 15
 Chrysler Corp. v. Schuenemann, 618 S.W.2d 799, 805 (Tex.Civ.App.1981); Smith v. Kinslow, 598 S.W.2d 910 (Tex.Civ.App.1980). See also Tex.Bus. & Com.Code Ann. Secs. 1.106, 2.714. Under this rubric, Parks is entitled to recover $34,000, the amount he paid Southeast for the stolen tractor. He is entitled to a refund of his money because he received no value at all. A stolen tractor is the same as no tractor. The Court awarded Parks $31,271.98, representing the amount Parks spent to secure and improve a replacement tractor for the stolen unit sold to Budd. This was error. Replacement value is pertinent only if actual value cannot be calculated directly. Parks is entitled to the refund of the full purchase price, $34,000.
 
 
 16
 In addition, Parks may recover such consequential damages, including "any loss resulting from general or particular requirements and needs of which [Southeast] at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." Tex.Bus. & Com.Code Ann. Sec. 2.715(b)(1). Southeast knew that Parks intended an immediate resale of the tractor. Southeast was thus aware that Parks might suffer consequential damages. Had Parks been required to refund the $42,000 purchase price paid by Budd, Parks would have been entitled to recoup its lost profits. See, e.g., General Supply and Equipment Co. v. Phillips, 490 S.W.2d 913 (Tex.Civ.App.1972). But Parks did not refund the $42,000, instead, it gained nearly $3,000 by satisfying Strawther with a tractor which cost less than the original unit.
 
 
 17
 The court awarded Parks $21,000, ostensibly representing the rental equivalent for seven months of use by Strawther of substitute tractors. This was error for this sum does not represent a loss to Parks as a consequence of the sale of the stolen tractor. Parks did not incur this cost out-of-pocket, because he supplied Strawther with substitutes furnished from his inventory. The award of damages for purported "rentals" is not supported by either the facts or the law, and must be vacated.
 
 
 18
 4. Attorneys' fees.
 
 
 19
 The lawyers reciprocally stipulated the amount of attorneys' fees each accrued as of midnight on the eve of trial. In awarding attorneys' fees, the district court did not look beyond that stipulation. In accepting that stipulation, without more, the court erred.
 
 
 20
 In Texas, as in most jurisdictions, attorneys' fees may be awarded only if provided for by statute or convention. Neeley v. Bankers Trust Company of Texas, 757 F.2d 621 (5th Cir.1985). Texas law provides for attorneys' fees in breach of contract actions. Tex.Civ.Prac. & Rem.Code Ann. Sec. 38.001 (formerly Tex.Rev.Civ.Stat.Ann. art. 2226); see Lyons v. Montgomery, 701 S.W.2d 641 (Tex.1985). To be recoverable, attorneys' fees "must be reasonable under the particular circumstances of the case and must have some reasonable relationship to the amount in controversy or to the complexity of the issue to be determined...." Giles v. Cardenas, 697 S.W.2d 422, 429 (Tex.Ct.App.1985). In Wuagneux Builders v. Candlewood Builders, 651 S.W.2d 919, 922-23 (Tex.Ct.App.1983) the court stated:
 
 
 21
 The question of what is a reasonable attorney's fee is a fact question to be determined by the fact finder. But the trial or appellate court has the duty to reduce the fee awarded if it is excessive. With regard to excessiveness, attorney's fees are in the same category as general damages.
 
 
 22
 In determining whether the award is excessive, the reviewing court is entitled to look at the entire record and to view the matter in the light of the testimony, the amount in controversy, the nature of the case, and our common knowledge and experience as lawyers and judges. (citations omitted)
 
 
 23
 The trial court encouraged the parties to stipulate to the amount of attorneys' fees. We applaud that effort to conserve limited trial time, but the stipulation in this instance did not relieve the court of its obligation to assure that the fees awarded were reasonable.
 
 
 24
 The trial court expressed serious reservations whether all of the legal services rendered were truly necessary. The court pungently observed that the case should have been settled long before trial. After reviewing this record we share that assessment.
 
 
 25
 In that setting, the court may not accept, without more, the mere reciprocal stipulation by counsel of the amount of attorneys' fees accrued. As the Texas cases hold, the amount of attorneys' fees must bear a reasonable relationship to the amount in controversy and the complexity of the litigation. Whether all time spent by counsel ostensibly preparing for trial is properly assessable is for the court to decide, after receiving and evaluating the evidence it deems necessary. Stipulations may factor into that equation, but in the case at bar, more was required because of the circumstances indicating the possibility of excessive fees.
 
 
 26
 In addition to reconsidering the award of attorneys' fees for trial preparation, on remand the court is to determine a fair fee for the trial and appeal, giving due consideration to the results on appeal. See Clark Advertising Agency, Inc. v. Tice, 490 F.2d 834 (5th Cir.1974); Pleasant Hills Children's Home of the Assemblies of God, Inc. v. Nida, 596 S.W.2d 947 (Tex.Civ.App.1980). In sum, the trial court is to receive evidence and thereafter determine a fair and reasonable amount of attorneys' fees for the proper preparation, trial, and appeal of this matter. In doing so, the trial court is empowered to make an appropriate revision of the judgment against Uresti.
 
 
 27
 The judgment of the trial court is modified to award damages to Parks of $34,000, and as so modified is AFFIRMED. The award of attorneys fees is VACATED and the matter is REMANDED for further proceedings consistent herewith.