Evis MARCOTTE, Plaintiff-Appellee,

v.

AMERICAN MOTORISTS INSURANCE
CO., Defendant-Appellant.

No. 82–2207.

United States Court of Appeals,
Fifth Circuit.

July 11, 1983.

Rehearing Denied Sept. 12, 1983.

William W. Vernon, Daniel M. McClure,
Fulbright & Jaworski, Houston, Tex., for
defendant-appellant.

R. Leon Pettis, Michael L. Baker, John G.
Bissell, Beaumont, Tex., for plaintiff-appellee.

Before REAVLEY and JOHNSON, Circuit Judges, and WYZANSKI *, District Judge.

REAVLEY, Circuit Judge:

In this diversity case a jury returned a verdict for plaintiff Evis Marcotte, finding that he was totally and permanently disabled under the terms of a disability insurance policy with his former employer, Velsicol Chemical Corporation. The jury also found that Velsicol's insurer, American Motorists Insurance Company ("AMIC"), a member of the Kemper Group of insurance companies ("Kemper"), made certain misrepresentations to Marcotte when he became insured, thereby violating the Texas

* District Judge of the District of Massachusetts, sitting by designation.

Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. tit. 4, § 17.41 *et seq.* (Vernon Supp.1982) [hereinafter referred to as "DTPA § ____"]. The jury awarded Marcotte $221,655 on the DTPA claim, and this award was tripled by the district court in accordance with that statute. AMIC appeals from the award of $664,965 treble damages plus $30,000 in attorneys' fees. We reverse the award of damages under the DTPA, hold that Marcotte's cause of action under that statute is time-barred, and remand to the district court for the entry of judgment for damages on Marcotte's breach of contract claim.

### Factual Background

Evis Marcotte began work as a process operator for Velsicol in February of 1975. At that time he signed an enrollment card provided to him by Velsicol for a group long-term disability insurance policy with AMIC. His signature authorized Velsicol to deduct the monthly insurance premium from his salary.

The disability policy signed by Marcotte provided that monthly benefit payments would begin 180 days after an employee suffered a disabling injury. Such benefits would be paid until the employee reached age 65, as long as the employee remained totally disabled. The policy contained two definitions of "total disability." During the first two years after an injury, an employee was totally disabled if he was completely unable to perform each and every duty pertaining to his occupation, *i.e.*, in this case, Marcotte's job with Velsicol. After two years of payments, total disability was defined as the complete inability of an employee to engage in each and every gainful occupation for which he was reasonably fitted by education, training or experience.

On January 10, 1976, less than one year after he began work for Velsicol, Marcotte fell from a highway billboard sign while working on a moonlighting job. He broke the heel bones in his feet as a result of the fall, which has since necessitated corrective surgery on several occasions. Because he was unable to return to work at Velsicol, Marcotte applied for disability insurance

benefits. An adjuster from Kemper visited Marcotte in his home and gave him a booklet explaining the terms of the policy. This visit was allegedly the first time Marcotte ever received anything in writing that contained the provisions of his policy.

On July 8, 1976, upon expiration of the 180 day waiting period following the injury, AMIC or Kemper began paying monthly disability benefits to Marcotte. These payments were made for two years, plus a few additional days, until July 31, 1978. On August 18, 1978, Kemper wrote Marcotte that it was thereafter discontinuing the monthly disability payments because medical reports indicated that he did not meet the more stringent definition of total disability applicable beyond two years after an injury.

Marcotte filed this diversity action against AMIC on December 3, 1979, when Kemper refused to reinstate the disability benefit payments despite medical evidence from Marcotte's family physician that he was permanently and totally disabled. Although Marcotte originally alleged four separate theories of recovery, only the two theories that were ultimately submitted to the jury are relevant to this appeal: (1) breach of the insurance contract by AMIC by a wrongful denial of liability or coverage, based on Tex.Ins.Code Ann. art. 3.62; and (2) misrepresentations regarding the policy, based on the DTPA.

Special interrogatories were submitted to the jury. In interrogatories I and II the jury found that Marcotte was totally and permanently disabled under the terms of the policy on July 31, 1978, the date on which Kemper discontinued disability payments. The jury's answers to interrogatories I and II constitute a finding of liability under the breach of contract claim. In response to interrogatory III the jury found for Marcotte on the DTPA claim, writing in the blank provided that he had suffered damages of $221,655.

### Timeliness of Marcotte's Claim under the DTPA

One of many contentions raised by AMIC on appeal is that Marcotte's misrepresenta-

tions claim under the DTPA is untimely, and therefore the district court's treble damage award of $664,965 must be reversed. We agree.

The DTPA was amended effective August 27, 1979, to provide a two year statute of limitations on all actions brought under that statute. *See* DTPA at § 17.56A. There is no indication in the statute or in Texas case law, however, that this 1979 amendment operates retroactively. Though we are faced with the situation where no specifically identified limitations period was in effect in this DTPA case which arose before 1979, we conclude that Texas would also apply a two year limitations period— that found in the former Tex.Rev.Civ.Stat. Ann. art. 5526(4)—to DTPA claims arising before August 27, 1979.

■ At the time the factual circumstances herein occurred, art. 5526(4) prescribed a two year limitations period in actions where the indebtedness was not evidenced by a contract in writing.[1] Marcotte's breach of contract claim was founded upon a written contract—the Kemper insurance policy— but the same cannot be said for his misrepresentations claim under the DTPA. In Texas a suit for treble damages under the DTPA is a claim for statutory damages, and the Texas courts have long held that a suit seeking to enforce an obligation created by statute is an "action for debt" covered by the two year limitations period of art. 5526(4). *See Rose v. First State Bank,* 122 Tex. 298, 59 S.W.2d 810 (1933); *Overton v. City of Houston,* 564 S.W.2d 400, 403 (Tex. Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). Furthermore, Marcotte's DTPA claim is founded on certain misrepresentations he contends that AMIC made concerning the policy's coverage, and the two year statute of limitations has traditionally been applied to actions in tort for fraudulent misrepresentation. *See Mooney v. Harlin,* 622 S.W.2d 83, 84–85 (Tex.1981); *Reynolds-Southwestern Corp. v. Dresser In-*

*dustries, Inc.,* 438 S.W.2d 135, 140 (Tex.Civ. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.). Thus, we conclude that in misrepresentation suits brought under the DTPA and arising before August 27, 1979, where the cause of action is not evidenced by a written contract, the two year limitations period of (since amended) art. 5526(4) applies. This conclusion finds support in the scarce Texas commentary existing on this problem. *See* R. Goodfriend & M. Lynn, *Of White Knights & Black Knights: An Analysis of the 1979 Amendment to the Texas Deceptive Trade Practices Act,* 33 Sw.L.J. 941, 999–1000 (1979); *but cf.* D. Bragg, P. Maxwell & J. Longley, *Texas Consumer Litigation* § 2.12 (Texas Law Institute, Inc., 2d ed. 1983).

■ In this case Marcotte testified that when the Kemper adjuster visited him in July of 1976, this was the first time he ever received a written copy of his policy and was also the first time he became aware of discrepancies between his prior understanding of the insurance coverage and its provisions as explained to him by the adjuster. For example, Marcotte maintained that up until this time he was unaware (due to Kemper's misrepresentations) that the insurance policy contained two different definitions of total disability. AMIC and Kemper vigorously contest that their own employees or their agents at Velsicol made any oral misrepresentations to Marcotte at the time he entered into the insurance contract in February of 1975. We need not reach these contentions or defenses. Even assuming that certain misrepresentations were made to Marcotte in 1975, it is clear by his own testimony that he became aware in July of 1976 that the insurance policy did not provide the type of disability benefits he had previously believed he would receive. Yet Marcotte did not file suit until December 3, 1979, a date clearly more than two years after he first discovered the alleged

---

1. Art. 5526(4) has since been amended (in 1979) to eliminate this provision. Currently, Texas law provides for a four year limitations period in any action for debt, whether or not the indebtedness is evidenced by or founded upon a written contract. Tex.Rev.Civ.Stat. Ann. art. 5527 (Vernon Supp.1982).

misrepresentations.[2] As a result his cause of action under the DTPA is time-barred under art. 5526(4) and the district court's award of $664,965 must be reversed.

### Breach of Contract Claim

■ As explained earlier the jury also found, in response to interrogatories I and II, that Marcotte was permanently and totally disabled on July 31, 1978, when Kemper ceased making disability payments. The jury's answers constitute a separate and independent finding for Marcotte on his breach of contract claim. We remand to the district court with instructions to enter judgment for damages in favor of Marcotte on his breach of contract claim. These damages will equal the amount of accrued benefits under the policy, under the finding of disability by the jury, to which Marcotte is entitled for the period from July 31, 1978 (the date on which AMIC ceased making disability payments) up until the date on which the district court enters judgment (or through the date of last disability). The district court is also instructed to award to Marcotte a sum equal to 12% of the total dollar amount which is awarded as damages on the breach of contract claim. Such a 12% penalty is mandated by the language of Tex.Ins.Code Ann. art. 3.62.[3]

■ Finally, we reverse the award of $30,000 in attorneys' fees to Marcotte. Because the district court found for Marcotte only on his DTPA claim, the court's allowance of attorneys' fees was implicitly based on DTPA provision § 17.50(d) which allows "reasonable and necessary attorneys' fees." However, art. 3.62 of the Texas Insurance Code requires the insurer to pay reasonable attorneys' fees in cases such as this. Thus, under art. 3.62 Marcotte is still entitled to an award of attorneys' fees. Here, however, the evidence presented by Marcotte's attorneys concerning time, costs and expenses did not allocate or segregate the work expended among the various types of claims. Since Marcotte has prevailed on only one of his four original theories or claims for recovery, the district court should allow only those attorneys' fees (through this appeal) relating to Marcotte's breach of contract claim. See *International Security Life Insurance Co. v. Finck,* 496 S.W.2d 544, 546–47 (Tex.1973). The district court should conduct a hearing to determine the attorneys' fees recoverable for services rendered and related to the judgment awarding accrued benefits under the insurance policy. *Id.* at 547.

REVERSED & REMANDED.

---

2. Marcotte argues that because AMIC continued to pay him disability benefits through July 31, 1978, there was no reason for him to think that any misrepresentations or coverage discrepancies perceived by him in July of 1976 might later result in Kemper's termination of benefits. His argument is predicated upon a provision in the insurance policy that the insured may not bring suit to recover on the policy prior to the expiration of 60 days after he furnishes written proof of loss, which must be furnished within 90 days after the insurer terminates benefits. Marcotte's reliance on these contractual provisions is misplaced because they relate solely to suits *on the policy.* Thus, while such provisions regarding proof of loss and time impose certain restrictions on Marcotte's claim for breach of contract, they have no application to his misrepresentations claim under the DTPA.

3. The district court acknowledged in its opinion at p. 3 that if it had held for Marcotte on the policy itself, rather than under the DTPA, a 12% penalty under art. 3.62 would be required.