The MURRCO AGENCY, INC. et al., Appellants,

v.

Alex RYAN et al., Appellees.

No. 05–90–00179–CV.

Court of Appeals of Texas, Dallas.

Nov. 7, 1990.

Charles E. Smith, Dallas, for appellants.

Wendel A. Withrow, Carrollton, for appellees.

Before McCLUNG, THOMAS and BURNETT, JJ.

## OPINION

McCLUNG, Justice.

The Murrco Agency, Inc. obtained a judgment against Alex Ryan based on conversion of funds and breach of contract involving misuse of proprietary business information. Murrco also obtained a judgment against Debbie Dickens for misuse of proprietary information. Murrco was awarded attorney's fees to be recovered from Ryan and Dickens. Ryan, by way of a counterclaim, obtained a judgment against Murrco for a breach of contract involving unpaid commissions. Ryan was awarded attorney's fees to be recovered from Murrco.

In three points of error, Murrco asserts that the trial court erred: (1) by failing to offset all amounts awarded, including the attorney's fees, and (2) by ordering that the attorney's fees awarded to Ryan were to be held by Ryan for the use and benefit of his attorney. In three cross points of error, Ryan and Dickens maintain: (1) that the trial court erred in entering judgment against them for misuse of proprietary information, (2) that the trial court erred in awarding attorney's fees to Murrco, and (3) that the jury's finding that Ryan was not injured by enforcement of a covenant not to compete was against the great weight and preponderance of the evidence. We sustain all of Murrco's points of error, and we overrule all of Ryan's and Dickens's cross points.

In the judgment, the trial court added all damages and interest awarded to Murrco, and subtracted therefrom the lesser damages awarded to Ryan, thereby awarding a net amount to Murrco. The trial court awarded $92,000 in attorney's fees to Murrco. The court also awarded $16,200 in attorney's fees to Ryan, but the trial court did not offset the awards of attorney's fees by subtracting the lesser award from the greater award. Further, the trial court decreed that the $16,200 in attorney's fees awarded to Ryan "shall be held by [Ryan] for the use and benefit of his attorney ... and Alex Ryan shall forthwith remit the same to [his attorney] upon receipt of the aforesaid $16,200."

In its first two points of error, Murrco argues that the trial court erred in failing to offset all awards, including attorney's fees, and in failing to award judgment of one net amount in favor of Murrco. Murrco asserts in its third point of error that the trial court erred in ordering the attorney's fees awarded to Ryan to be held for the use and benefit of Ryan's attorney.

It is undisputed that both parties were entitled to attorney's fees even though one party's recovery was entirely offset by the opposing party's claim. *See McKinley v. Drozd*, 685 S.W.2d 7, 10–11 (Tex.1985) (interpreting former article 2226 of the Revised Civil Statutes, now codified in chapter

38 of the Civil Practice and Remedies Code); *Arguelles v. Kaplan*, 736 S.W.2d 782, 786–87 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) (decided under the present statute, section 38.001 of the Civil Practice and Remedies Code); *see also* TEX. CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). It has been held that section 38.001 was not intended to provide for an award of attorney's fees directly to a party's attorney; instead, the fees are to be awarded to the client. *Streeter v. Thompson*, 751 S.W.2d 329, 331 (Tex.App.—Fort Worth 1988, no writ).[1] Although the $16,-200 in attorney's fees were purportedly awarded to Ryan, Ryan was also required to hold them for the use and benefit of his attorney and to remit them to his attorney upon receipt. These additional conditions contained in the judgment effectively override the unqualified requirement that the attorney's fees are to be awarded to the client.

Moreover, these gratuitous conditions are designed to benefit a person who was not a party to the lawsuit, and they are inconsistent with both the jury's verdict and Ryan's prayer for attorney's fees as contained in his pleadings. *See* TEX.R. CIV.P. 301 (a judgment shall conform to the pleadings and the verdict and shall give a *party* all relief to which he may be entitled). The record establishes that Ryan's attorney was not a party to the lawsuit, nor were there any pleadings requesting that attorney's fees be awarded to Ryan for the use and benefit of his attorney. By its

verdict, the jury simply found that Ryan was entitled to $16,200 in attorney's fees. Because the trial court's judgment grants relief to one who was not a party to the lawsuit, and because the award is in conflict with the jury's verdict and the relief requested in Ryan's pleadings, the trial court erred in awarding attorney's fees to Ryan for the use and benefit of his attorney and in requiring that Ryan remit the fees to his attorney upon receipt. *See Streeter*, 751 S.W.2d at 331.[2]

The claims for attorney's fees belong to the litigants, not to their attorneys. *Satellite Earth Stations East, Inc. v. Davis*, 756 S.W.2d 385, 387 (Tex.App.—Eastland 1988, writ denied). In the absence of any authorization for decreeing that the attorney's fees awarded to Ryan should be held for the use and benefit of Ryan's attorney and remitted to the attorney upon receipt, the attorney's fees awarded to the parties should have been offset along with the other awards of damages and interest. *See Satellite Earth Stations*, 756 S.W.2d at 387; *Streeter*, 751 S.W.2d at 331–32.[3]

We sustain Murrco's three points of error. We reform the judgment so that the attorney's fees are awarded unconditionally to the respective parties. We further reform the judgment by providing that all awards, including attorney's fees, are offset.

In their first cross point of error, Ryan and Dickens maintain that the trial

---

1. When it so desires, the Texas Legislature has had no difficulty in specifically providing that attorney's fees may be awarded directly to the attorney. *See* TEX.FAM.CODE ANN. §§ 3.77, 3.93 (Vernon Supp.1990).

2. At oral argument, the parties acknowledged that Ryan filed a petition in bankruptcy. Murrco contends that the form of the trial court's judgment may well lead to an inequitable result insofar as Murrco is unable to collect its judgment from Ryan because of the bankruptcy, whereas Ryan will nevertheless collect $16,200 from Murrco for the use and benefit of Ryan's attorney, despite the fact that the total amounts awarded to Murrco far exceed the amounts awarded to Ryan. Although successful litigants often run the risk that judgments will be uncollectible, we agree that those risks

should not be exacerbated by an unauthorized judgment that effectively awards attorney's fees directly to the attorney of a judgment-proof litigant. *See Satellite Earth Stations East, Inc. v. Davis*, 756 S.W.2d 385, 387 (Tex.App.—Eastland 1988, writ denied); *Streeter*, 751 S.W.2d at 331. To the extent that the judgment in favor of Murrco goes unpaid because of Ryan's bankruptcy, Murrco could well end up paying the attorneys for *both* parties because of the form of the trial court's judgment.

3. In cases where this issue is not expressly discussed, all awards, including awards of attorney's fees, are routinely offset. *See, e.g., Acco Constructors, Inc. v. National Steel Prods. Co.*, 733 S.W.2d 368, 371–72 (Tex.App.—Houston [14th Dist.] 1987, no writ).

court erred in entering judgment against them for misuse of proprietary information. The jury found that both Ryan and Dickens had used proprietary business information obtained from Murrco in order to divert business from Murrco, causing economic detriment to Murrco.[4]

Because the first cross point is somewhat vague and very general, we are required to ascertain the nature of the complaint from the wording of the point and the argument under the point. *See Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). In their argument, Ryan and Dickens assert that certain facts were undisputed. Ryan and Dickens conclude their argument under the cross point by stating that Murrco was not entitled to any jury questions as a matter of law and that a take-nothing judgment should have been rendered in favor of Ryan and Dickens with respect to the alleged misuse of proprietary information. Their argument that the claim of misuse of proprietary information should not have been submitted to the jury is particularly telling in view of the rule that a trial court must submit a jury question even if the evidence is factually insufficient to support a judgment based on the submitted proposition, whereas the court may refuse to submit a question to the jury only if there is no evidence raising the issue. *See, e.g., Burke Wiley, Inc. v. Lenderman*, 545 S.W.2d 226, 228 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). We determine that Ryan and Dickens are arguing that there was no evidence to support the alleged misuse of proprietary information and that these claims therefore should not have been submitted to the jury. *See Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965); *American Home Assurance Co. v. Brandt*, 778 S.W.2d 141, 144 (Tex.App.—Texarkana 1989, writ denied); *Alstan Corp. v. Board of Admin.*, 713 S.W.2d 130, 132–33 (Tex.App.—Austin 1986, writ ref'd n.r.e.).

■ In reviewing Ryan's and Dickens's no-evidence point, we are required to consider only the evidence and inferences which tend to support the jury's findings, disregarding all evidence and inferences to the contrary. *Jacobs v. Danny Darby Real Estate, Inc.*, 750 S.W.2d 174, 175 (Tex.1988). A no-evidence point should be sustained only when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the only evidence offered to prove a vital fact is barred from consideration by rules of law or evidence; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *C & C Partners v. Sun Exploration and Prod. Co.*, 783 S.W.2d 707, 716 (Tex.App.—Dallas 1989, writ denied).

Murrco is an insurance agency doing business as Cooper Aircraft Insurance. Murrco sold nonstandardized policies providing insurance coverage for aircraft. Ryan and Dickens were employees of Murrco. They both left Murrco, and Ryan began competing with Murrco via his own business known as Universal Insurance Associates. Dickens went to work for Ryan.

■ We find a multitude of evidence supporting the jury's finding that Ryan and Dickens had misused proprietary information obtained from Murrco. Roy Murray testified that Murrco customer lists which included policy expiration dates were considered to be trade secrets.[5] He said that those lists were divided among employees on a "need to know" basis and were confidential. Each employee's list contained information on different customers, and employees were instructed not to exchange, recopy or republish the lists nor to disclose the information to outsiders.

---

**4.** In appropriate cases, Texas law provides for protection of legitimate business interests, including business goodwill, trade secrets, and other confidential or proprietary information. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex.1990) (op. on motion for reh'g).

**5.** A list of customers can be a trade secret. *Hyde Corp. v. Huffines*, 158 Tex. 566, 585–86, 314 S.W.2d 763, 776, *cert. denied*, 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d 148 (1958); *see American Precision Vibrator Co. v. National Air Vibrator Co.*, 764 S.W.2d 274, 276 (Tex.App.—Houston [1st Dist.] 1988, no writ).

Murray stated that Murrco maintained the information in a restricted and secure manner. He said that both expiration dates and premium amounts [6] are confidential information. Murray testified that Murrco had built up its business over a period of twelve years in a highly competitive market.

■ Joseph Benero, president of Global Aviation Insurance Services, testified as an expert witness. He stated that client lists are proprietary and confidential and constitute the lifeblood of the aviation insurance industry, which is a recognized specialty within the insurance industry. Benero testified that client lists are developed through years of hard work. He said that client lists containing policy expiration dates are vital and valuable. He testified that employees in possession of such information are regarded as being in a position of special trust and confidence. Benero indicated that knowledge of policy expiration dates and premiums charged provides a competitive advantage.[7]

■ Ryan had contractually agreed to keep Murrco's proprietary information confidential and to help ensure that such information was not divulged to outsiders. In her testimony at trial, Dickens agreed that she had a duty of loyalty to Murrco, her previous employer.[8] Both Ryan and Dickens left Murrco. Murray testified that Dickens did not return her current customer list to Murrco when she left even though she was requested to do so. He indicated that Ryan was also asked to turn in his list and failed to do so. Ryan testified that Dickens began working for him after she left Murrco.

A number of documents were introduced that constituted at least circumstantial evidence that Ryan and Dickens used Murrco client information to solicit aviation insurance business after they had left Murrco. For example, an extensive listing of phone calls from Ryan and Dickens to Murrco clients was introduced into evidence. Other documents included a chronology of events and contacts and a summary of contacts between Murrco clients and Ryan and Dickens.

Ryan testified that he and Dickens contacted a number of Murrco clients. He stated that "[w]e were prospecting pretty heavy." Ryan said that Dickens had a list of customers, and he said that he did not check her list to see if it was a list of Murrco clients. Dickens testified that she contacted clients that she had dealt with while at Murrco. She initially denied that she discussed aviation insurance when she called these clients, but later stated that she did talk about insurance with some of them. Dickens maintained that most of the telephone calls were personal, but she admitted that Ryan paid for all of the calls. She said that a lot of the clients she contacted were her friends and that Ryan paid the long distance phone bills for those calls to her friends. A document admitted into evidence contained an itemized estimate of damages related to loss of Murrco business because of Ryan's and Dickens's activities.

■ Clearly, there was competent evidence supportive of the jury's findings of misuse of proprietary information. We overrule the first cross point of error.[9]

---

6. Pricing information can constitute a trade secret. *See Bertotti v. C.E. Shepherd Co.,* 752 S.W.2d 648, 653–54 (Tex.App.—Houston [14th Dist.] 1988, no writ).

7. A trade secret is defined in part as information that provides a competitive advantage to its user. *See Hyde Corp.,* 314 S.W.2d at 776; *Collins v. Ryon's Saddle & Ranch Supplies, Inc.,* 576 S.W.2d 914, 915 (Tex.Civ.App.—Fort Worth 1979, no writ).

8. Liability for disclosure or use of proprietary or trade secret information may be based upon breach of contract or upon breach of the confidence reposed in one who is in a confidential relationship with another who discloses the protected information to him. *Hyde Corp.,* 314 S.W.2d at 769–70.

9. As previously discussed, the first cross point of error does not clearly articulate the complaint being raised. In an effort to give Ryan and Dickens the benefit of any doubts, we note that the argument under the cross point also contains a suggestion that the questions concerning misuse of proprietary information should not have been submitted to the jury because the trial court had earlier ruled that part of the agreement between Ryan and Murrco was unen-

In the second cross point of error, Ryan and Dickens argue that the trial court erred in awarding $92,000 in attorney's fees to Murrco. They note that Murrco's evidence regarding attorney's fees came from the testimony of expert witness Joe Matthews. Ryan and Dickens complain that the itemized legal bill, on which some of Matthews's testimony was based, was not introduced into evidence. However, they have cited no authority requiring that the bill itself be introduced into evidence, nor have we found any such authority. All of Matthews's testimony, including that which was based on the itemized bill, was uncontroverted. Matthews stated that the fees sought were fair and reasonable.

Ryan and Dickens maintain that Matthews failed to testify that the attorney's fees sought were necessary. The case relied upon by Ryan and Dickens is inapplicable because it was a deceptive trade practices case involving a statute authorizing attorney's fees which are both "reasonable and necessary." *See Green Tree Acceptance, Inc. v. Pierce*, 768 S.W.2d 416, 424–25 (Tex.App.—Tyler 1989, no writ); TEX.BUS. & COM.CODE ANN. § 17.50(d) (Vernon 1987). The attorney's fees awarded in this case were awarded pursuant to chapter 38 of the Texas Civil Practice and Remedies Code, which contains no requirement that fees be necessary. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986) (claimant may recover "reasonable" attorney's fees). The statutory predecessor to section 38.001 (former article 2226) did not require proof that fees were both necessary and reasonable; proof of the reasonableness of the fees was sufficient. *See Prairie Valley Indep. School Dist. v. Sawyer*, 665 S.W.2d 606, 611 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); *see also* Act of May 18, 1979, 66th Leg., R.S., ch. 314, § 1, 1979 Tex.Gen. Laws 718 (former article 2226, providing that claimant may recover "reasonable amount" as attorney's fees), *repealed by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 9, 1985 Tex.Gen.Laws 3242, 3322. Section 38.001, like its statutory predecessor, imposes no requirement that the attorney's fees sought must be shown to be necessary.

Ryan and Dickens next contend that Matthews failed to segregate the attorney's fees by identifying those fees attributable to claims for which attorney's fees were authorized. However, although Ryan and Dickens objected to the jury question on attorney's fees, they did not object on the ground that it failed to provide for segregation of attorney's fees. Therefore, any error committed by the trial court in failing to award only those fees attributable to claims for which attorney's fees were authorized has been waived. *See Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 823 (Tex.1985).

Ryan and Dickens argue that the award to Murrco of $92,000 in attorney's fees was excessive when compared to the damages award of approximately $28,000. The reasonableness of attorney's fees is a question of fact, and an award of fees must be supported by credible evidence. Generally, the award should bear some reasonable relationship to the amount in controversy. *Travelers Ins. Co. v. Brown*, 750 S.W.2d 916, 918–19 (Tex.App.—Amarillo

forceable because Ryan was engaged in a common calling. (The concept of "common calling" is no longer a valid consideration to be used in testing the reasonableness of noncompetition agreements. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 683 (Tex.1990) (op. on motion for reh'g); TEX.BUS. & COM CODE ANN. § 15.50 (Vernon Supp.1990).) However, the trial court ruled that only part of the restrictions agreed upon were unenforceable, and there is no complaint that other restrictions should have been ruled unenforceable. Some of the surviving restrictions concern solicitation of Murrco clients and use of proprietary information.

Therefore, we conclude that the trial court's determination that part of the agreement was unenforceable does not provide a basis for sustaining the first cross point of error. In this regard, we note that an invalid covenant not to compete may be severed from other lawful portions of the contract if there is valid consideration and if the intent of the parties is not thereby frustrated. *See Williams v. Williams*, 569 S.W.2d 867, 871 (Tex.1978); *Rogers v. Wolfson*, 763 S.W.2d 922, 925 (Tex.App.—Dallas 1989, writ denied); *Hi-Line Elec. Co. v. Dowco Elec. Prods.*, 765 F.2d 1359, 1363 n. 5 (5th Cir.1985) (applying Texas law).

1988, writ denied). It is within the jury's province to determine the reasonable value of an attorney's services. *Graves v. Sommerfeld,* 618 S.W.2d 952, 954–55 (Tex.Civ. App.—Waco 1981, writ ref'd n.r.e.). The amount of damages recovered is only one factor to be considered in measuring the reasonableness of the amount of attorney's fees recovered. Other factors to be considered include the total amounts of money involved in the case, the nature of the case, the time spent, and the skill and experience required. *See Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.,* 739 S.W.2d 622, 626 (Tex.App.—Dallas 1987, writ denied); *Paulus v. Lawyers Sur. Corp.,* 625 S.W.2d 843, 845 (Tex.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

Murrco sought actual damages in amounts exceeding $94,000. By their counterclaims, Ryan and Dickens sought damages in the hundreds of thousands of dollars. Matthews testified at considerable length concerning the reasonableness of the attorney's fees sought by Murrco. His unrebutted testimony touched on a number of the factors worthy of consideration. Matthews stated that this case had involved a great amount of time and difficulty. He testified about necessary overhead, resources, support staff, equipment, and supplies. He said that the fees sought were very reasonable and amounted to less than what would be considered reasonable in the community. The amount of attorney's fees found by the jury and awarded by the trial court was supported by Matthews's testimony. We find no basis for a determination that the fees awarded were excessive.

Ryan's and Dickens's arguments concerning the award of attorney's fees to Murrco are without merit. We overrule the second cross point of error.

In the third cross point of error, Ryan maintains that the jury's finding that he was not injured by enforcement of a covenant not to compete was against the great weight and preponderance of the evidence. Ryan also asserts that he was entitled to a "yes" answer as a matter of law. The very brief argument under this cross point contains no citation of authority and no reference to the location of any evidence in the record which might support Ryan's contentions, as required by the rules of appellate procedure. *See* TEX.R.APP.P. 74(f). The failure to cite to any authority constitutes a waiver of the alleged error. *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 810 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dismissed,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). A party asserting error on appeal bears the burden of showing that the record supports its contentions and of specifying the place in the record where matters complained of or relied upon are shown. The failure to meet this burden results in waiver of the asserted error. *See Most Worshipful Prince Hall Grand Lodge v. Jackson,* 732 S.W.2d 407, 412 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Because the third cross point of error has been waived, we overrule it.

We reform the trial court's judgment so that the attorney's fees are awarded unconditionally to the respective parties. We further reform the judgment by providing that all awards, including attorney's fees, are offset. As reformed, we affirm the judgment of the trial court.