**GARDEN STATE AUTO PARK PONTIAC GMC TRUCK, INC., Plaintiff,**

v.

**ELECTRONIC DATA SYSTEMS CORPORATION, Defendant.**

**No. CIV. A. 94–3145(MLC).**

United States District Court, D. New Jersey.

Dec. 15, 1998.

---

Michael D. Schottland, Bettina E. Munson, Schottland, Manning, Rosen,Caliendo & Munson, Freehold, NJ, for Plaintiff.

Jonathan M. Preziosi, Jamieson Moore Peskin & Spicer, Princeton, NJ, for Defendant.

COOPER, District Judge.

This matter comes before the Court on defendant's renewed motion for attorney's fees and costs pursuant to the contract entered between plaintiff Garden State Auto Park ("GSAP") and defendant Electronic Data Systems, Inc. ("EDS"). For the reasons expressed herein, the motion for attorney's fees and costs is granted, and the Court hereby finds that the amount of $57,-918.67 represents reasonable fees and costs under the circumstances of this case.

## BACKGROUND

The relevant factual background has been set forth in this Court's May 31, 1996 and March 25, 1998 Memoranda and Orders and will not be repeated herein. Briefly, plaintiff GSAP initiated this lawsuit in the Superior Court of New Jersey, Law Division, Monmouth County on May 24, 1994. The Complaint alleged a breach of warranty claim against defendant EDS. EDS removed the case to this Court on June 30, 1994 and filed a counterclaim against GSAP for breach of contract and unjust enrichment.

EDS filed a motion for summary judgment, arguing that plaintiff's breach of warranty claim alleged in the Complaint was barred by the applicable statute of limitations as set forth in the parties' agreement. We granted the motion by Memorandum and Order dated May 31, 1996, finding that the claim against EDS was barred by the one-year statute of limitations provision in the parties' contract dated March 28, 1991.

GSAP filed an appeal of our May 31, 1996 Memorandum and Order to the Court of Appeals on June 24, 1996. On July 1, 1996, EDS filed its first motion for attorney's fees and costs. We denied that motion without prejudice because of the pending appeal before the Third Circuit. (Order dated 3–27–97.) On June 9, 1997, the Court of Appeals dismissed the appeal for want of jurisdiction because of EDS's pending counterclaim before this Court.

EDS filed a second motion for attorney's fees on July 14, 1997, seeking fees and costs incurred prior to May 31, 1996 as well as fees and costs incurred in litigating the appeal of our May 31, 1996 Memorandum and Order. Shortly thereafter, GSAP moved for summary judgment on EDS's counterclaim. Our March 25, 1998 Memorandum and Order: (1) denied GSAP's motion for summary judgment, and (2) granted in part and denied in part EDS's motion for attorney's fees and costs. With respect to EDS's motion for attorney's fees and costs, we held as a matter of law that EDS was a prevailing party un-

der the relevant provision of the contract.[1] We further stated, however, that the evidence EDS presented on the issue of reasonableness was insufficient at that juncture. We thus denied EDS's motion in part without prejudice.

EDS filed the instant motion for attorney's fees and costs along with supportive materials on April 14, 1998. The supportive materials include certifications of local and lead counsel stating that the amount of attorney's fees requested is, in their opinion, reasonable under the circumstances. (*See* Certif. of Jonathan M. Preziosi, Esq. ("Preziosi Certif."); Certif. of Franklin S. Blackstone, Esq. ("Blackstone Certif.").)

EDS requests $153,118.21 in attorney's fees and costs, which reflects $121,530.86 charged by Goodwin and Carlton, P.C. ("G & C") as lead counsel, and $31,587.35 charged by the law firm of Jamieson, Moore, Peskin & Spicer ("JMP & S") as local counsel. Plaintiff argues that the amount of fees and costs sought by EDS is unreasonable under the circumstances.

GSAP does not appear to dispute the reasonableness of the billing rates charged by the attorneys from both firms or the accuracy of the records submitted; rather, it challenges the number of hours billed by the attorneys.[2] Plaintiff argues that both law firms spent an inordinate number of hours on discovery matters prior to filing the motion for summary judgment in light of the fact that EDS prevailed on the basis of a relatively straightforward application of the one-year statute of limitations in the agreement. Plaintiff claims in that connection that attorneys for EDS began researching the possibility of asserting a limitations defense as early as November 1994. (*See* Preziosi Certif., Ex. A, entry dated 11–28–94.) Plaintiff further maintains that it is unfair for EDS to seek reimbursement of costs for travel time for members of G & C to travel to this Court and the Third Circuit when EDS had retained local counsel here in New Jersey. GSAP also contends that any fees relating to work performed by local counsel should be excluded because EDS had lead counsel in Texas. Finally, plaintiff points out that GSAP has included amounts in their fee application which are unrelated to the successful summary judgment motion. (*See generally* Certif. of Michael D. Schottland, Esq. ¶ 4; Ltr. From Michael D. Schottland, Esq. to Hon. Mary L. Cooper, U.S.D.J. dated 4–30–98; Ltr. from Bettina Munson, Esq. to Hon. Mary L. Cooper, U.S.D.J. dated 11–22–98.)

### DISCUSSION

Relying upon the plain language of the 1991 agreement and the meaning of the phrase "prevailing party" under Texas law, this Court held that EDS qualifies as a prevailing party with respect to our dismissal of plaintiff's breach of warranty claim against EDS. Accordingly, our inquiry here is limited

---

1. Paragraph 20 of the March 28, 1991 agreement states:

 Attorneys Fees: If any legal action or other proceeding is brought for the enforcement of this agreement or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this agreement, the prevailing party shall be entitled to recover reasonable attorneys fees and other costs incurred in that action or proceeding, in addition to any other relief to which it may be entitled.

2. Plaintiff GSAP requests an evidentiary hearing to determine the appropriate fee award. (*See* Ltr. From Bettina E. Munson, Esq. to Hon. Mary L. Cooper, U.S.D.J. dated 10–22–98 at 4.) We note first that the request was not included in plaintiff's initial submissions in opposition to the instant motion. However, assuming *arguendo* that we would entertain such a request in the manner that it was presented to the Court, we do not find it necessary to hold a hearing on this issue. The billing records submitted in connection with EDS's fee application provide detailed descriptions concerning the entries contained therein. From these descriptions, we have been able to segregate those amounts attributable to the issue upon which EDS has prevailed. As is evident from our analysis, where there was an ambiguous description of the services provided, we excluded the corresponding amount from our computation and reduced the amount recoverable accordingly. *Cf. Marcotte v. American Motorists Ins. Co.*, 709 F.2d 378, 381 (5th Cir. 1983) (remanding to district court for a hearing to determine the attorney's fees recoverable for services rendered and related to plaintiff's successful breach of contract claim; evidence concerning time, costs and expenses submitted by prevailing party's attorneys did not allocate or segregate entries among various claims by plaintiff).

to the reasonableness of the amount of fees and costs requested by EDS.

The Court must ascertain the meaning of the term "reasonableness" as it is used in the 1991 agreement. The determination of the meaning of the term "reasonableness" as it is used in the contract is governed by the law of the contract, which is Texas law in this case. We thus find it appropriate to look to Texas law for guidance in determining the reasonableness of the fee request. *See Texas Comm. Bank Nat'l Ass'n v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990) (finding that in diversity cases, state law governs the issue of attorney's fees).

 The amount of attorney's fees awarded by the Court must be reasonable under the circumstances of the case and must have some reasonable relationship to the amount in controversy or to the complexity of the issue to be determined. *Id.; Jerry Parks Equip. Co. v. Southeast Equip. Co.*, 817 F.2d 340, 344 (5th Cir.1987). In determining the reasonableness of the attorney's fees and costs requested, we must review the entire record, consider the evidence, amount in controversy and nature of the case, and use common knowledge and experience as lawyers and judges. *See Argonaut Inc. Co. v. ABC Steel Products Co.*, 582 S.W.2d 883, 889 (Tex.App. Texarkana 1979, writ ref'd n.r.e.) (noting the relevant factors for consideration in the context of appellate review of the trial court's determination); *see also Thomas v. Thomas*, 917 S.W.2d 425, 436 (Tex.Ct.App.1996).

 The prevailing party should present the testimony of an expert (usually the party's attorney) who can opine as to whether the amount of time and hourly rate is reasonable in light of the unique circumstances presented in the case. *Murrco Agency Inc. v. Ryan*, 800 S.W.2d 600, 606–07 (Tex.Ct. App.1990). The attorney may establish the reasonableness of the fee by comparing the hourly rate charged to the prevailing party to the hourly rate in the community for similar legal services.[3] *Id.* Other evidence of reasonableness may be gleaned from a review of the case file and customary rates if no other evidence is available. *Flint & Assoc.*, 739 S.W.2d at 626; *see also Thomas*, 917 S.W.2d at 436.

 The reasonableness of the application and the amount actually awarded are issues which lie within the sound discretion of the trial court. *See Smith v. United Nat'l Bank–Denton*, 966 F.2d 973, 978 (5th Cir. 1992). The amount of attorney's fees and costs awarded is a question of fact, the determination of which requires sufficient evidence on each element.[4] *Williamsburg Nursing Home, Inc. v. Paramedics, Inc.*, 460 S.W.2d 168, 169 (Tex.Ct.App.1970). The party seeking to recover attorney's fees carries the burden of proof on that issue. *Smith*, 966 F.2d at 978. In order to recover attorney's fees, the prevailing party must provide evidence segregating attorney's fees among the various claims or responsible parties. *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex.1991).

Lead counsel G & C, by and through attorney Franklin Blackstone, Esq., submitted billing records which reflect all work done on EDS's behalf by members of the G & C firm from June 30, 1994 to December 1997. The billing records provide a description of the services rendered, the date the work was performed, the initials of the individual performing the work, the amount of time spent on each project, the amount of money billed to EDS for each project and the hourly billing rate of the individuals who performed work on EDS's behalf. Local counsel JMP & S, by and through attorney Jonathan Preziosi, Esq., also submitted detailed billing records which reflect work performed from June 1994 through December 1997. Similar details are contained in the JMP & S billing records.

---

3. We note that both Franklin Blackstone of G & C and Jonathan M. Preziosi of JMP & S indicated in their certifications their opinions that the amounts requested are reasonable under the circumstances of this case. (Preziosi Certif. ¶ 6; Blackstone Certif. ¶ 9.) We do not, however, find those opinions conclusive on the matter.

4. While the issue of reasonableness is a question of fact, we find the matter ripe for resolution at this juncture, as there is no factual dispute concerning the amount of time billed by EDS's attorneys. We also note that plaintiff does not object to our deciding this issue by motion.

■ The Court rejects at the outset the total amount requested by EDS, as it is clear that the fee application is overinclusive and unreasonable. By our calculations, the total amount requested reflects attorney's fees and costs charged by both firms for all of the legal services performed on EDS's behalf throughout this entire litigation. However, EDS is only the prevailing party with respect to matters relating to its successful summary judgment motion. Accordingly, it cannot recover attorney's fees relating to other matters in this case. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex.1991); *see also Marcotte v. American Motorists Ins. Co.*, 709 F.2d 378, 381 (5th Cir.1983) (applying Texas law). We find that a more reasonable fee award would reflect only those amounts billed for work performed which was related to the dismissal of the Complaint against EDS.

It is clear that the Court must undertake its own independent examination of the billing records and calculate the fee award based upon the relevant factors set forth above. *See Thomas*, 917 S.W.2d at 436; *Argonaut*, 582 S.W.2d at 889. In that connection, the Court has carefully scrutinized the attorney certifications, billing records and entries therein, relevant pleadings, discovery which is of record, briefs filed with respect to EDS's motion for summary judgment, and

our May 31, 1996 Memorandum and Order granting summary judgment to EDS on GSAP's Complaint. We have also reviewed and considered the relevant factors outlined in the case law as applied to the facts in this case. Specifically we recognize that: (1) the amount in controversy in GSAP's Complaint against EDS was over $600,000; (2) the dismissal of the Complaint occurred at summary judgment, thus obviating a need for a trial on the merits; (3) EDS obtained summary judgment in its favor based upon a relatively straightforward statute of limitations defense arising out of the plain language of the contract; and (4) GSAP filed a premature appeal of our May 31, 1996 decision to the Third Circuit, as there was no disposition of the counterclaim still pending in this Court at that time.

Based upon the descriptions provided by the attorneys, we have not included in our computation any amounts which we consider to have been included in the fee request in error. First, those amounts include any fees paid by EDS for work which was unrelated to EDS's summary judgment motion.[5] Second, we have also excluded any amounts which correspond to entries so general in description that we were unable to ascertain whether or not the work was related to EDS's motion for summary judgment. For example, there were many entries which involved general tasks such as review of documents, "action items" or conferences by both

---

5. For example, from June 1994 to June 1996, G & C billed at least $4,923.12 worth of work which was unrelated to EDS's summary judgment motion. This includes time spent answering the Complaint; drafting the counterclaim; filing and preparing the notice of removal; and researching and drafting briefs in opposition to IBM's motion for summary judgment. (*See, e.g.,* Blackstone Certif., Ex. 1, entries dated 6–29–94, 6–30–94, 7–5–94, 7–8–94, 7–12–94, 7–14–94, 7–15–94, 7–16–94, 7–18–94, 7–22–94, 9–12–94, 9–15–94, 10–31–94, 11–1–94, 11–9–94, 11–22–94, 12–7–94, 12–8–94, 12–12–94, 12–14–94, 12–15–04, 12–16–94, 12–19–94, 2–16–95, 3–23–95, 5–8–96, 5–10–96, 5–24–96, 5–27–96, 5–28–96, 5–28–96.) Similarly, from May 1996 to August 1997, we calculated at least $786.25 which was billed for work by G & C which was unrelated to EDS's summary judgment motion. (*See, e.g.,* Blackstone Certif., Ex. 2: entries dated 5–21–97, 5–22–97, 5–27–97, 5–28–97, 5–29–97, 5–30–97.) Finally, from June 1997 to December 1997, virtually all of the entries found in the billing records during that time period relate to work on other aspects of the litigation. By our conservative

estimation, from June to December 1997, G & C spent a total of 77.35 hours working on unrelated matters and billed EDS $11,801.25 for the services rendered.

We observe the same pattern in JMP & S's billing records. For example, from June 1994 to December 1997, the JMP & S billing records submitted to the Court include amounts charged for work on matters such as, *inter alia,* (1) drafting and filing of Notice of Removal, Answer and counterclaim; (2) former defendant IBM's motion for summary judgment; (3) GSAP's motion for summary judgment on EDS's counterclaim, (4) depositions related to counterclaim and (5) damages research. (*See, e.g.,* Preziosi Certif., Ex. A, entries dated 7–13–94, 7–18–94, 10–25–94, 11–8–94, 11–29–94, 12–7–94, 12–15–94, 12–19–94, 12–23–94, 2–3–95, 2–6–95, 2–28–95, 5–19–95, 7–7–95, 7–17–95, 11–22–95, 11–30–95, 5–10–96 5–17–96, 5–17–96, and 6–27–97. From July 1997 to December 1997, virtually every billing entry was unrelated to EDS's motion for summary judgment).

law firms. The Court in many instances was unable to determine how such entries related to this case.[6] Finally, we disregarded any portion of the records which was faded and illegible because of the poor quality of the photocopying, as we were unable to ascertain whether or not the entries related to EDS's summary judgment motion, appeal or attorney's fee application.[7]

Our calculation is described in detail below. However, in the interest of clarity, we will provide a summary description of our method at the outset. We have analyzed the fee requests pertaining to each law firm separately, as EDS submitted two separate billing records (one for each law firm). We separated the entries in the billing records into "litigation tasks" so as to analyze the reasonableness of the time spent (and amounts charged) on each phase of the litigation related in any way to EDS's motion for summary judgment.[8] These litigation tasks are: (1) discovery-related matters; (2) preparation, research and discussions related to

EDS's summary judgment motion;[9] (3) litigation and mediation of GSAP's appeal in the Third Circuit;[10] and (4) two attorney's fee applications before this Court.[11] We then reviewed the work description for each billing entry and paired each entry with its appropriate litigation task (or disregarded the entry if unrelated or indecipherable). The entries under each category were totaled to determine as best as possible the true amount of time spent and fees charged relating to each litigation task.[12] We then decided the appropriate fee allocation for each litigation task, adjusting the amount where necessary in light of the facts and circumstances of this case and the relevant legal considerations. Finally, we considered the amount of costs to be awarded in relation to the work performed by each law firm.

### A. Goodwin and Carlton

#### 1. Discovery–Related Matters

■ G & C, by and through numerous attorneys, paralegals and summer associates,

---

**6.** Our review of G & C billing records from June 1994 to May 1997 reveals several entries which are in our opinion so non-descriptive so as to require us to exclude them from the fee calculation. Examples of such entries include but are not limited to entries by G & C staff on the following dates: 8–22–94, 11–22–94, 12–25–94, 1–23–95, 5–1–95, various entries occurring in 10–95, 11–9–95, 5–28–96, 5–31–96, 8–7–96, 6–2–97, 6–6–97, 6–9–97, 6–13–97, 6–16–97, 6–17–97, and 6–19–97. (Blackstone Certif., Exs. A–C.) The JMP & S billing records also have ambiguous billing descriptions. Examples found in those records include but are not limited to entries documented on the following dates: 7–8–94, 10–19–94, 11–2–94, 5–18–95, 6–6–95, 6–27–96, 2–5–97, 5–27–97, 6–10–97, 6–12–97 and 6–15–97.

**7.** We only encountered this problem with the billing records submitted by JMP & S. (*See* Preziosi Certif., Ex. A, billing record dated 7–15–94 at 1.)

**8.** Our organization in this manner not only facilitated our analysis of the reasonableness of the time spent for each litigation task, but also was essential for determining whether there was duplication of efforts on certain pretrial matters by local and lead counsel. Of course, the Court must take both of those matters in consideration in determining the reasonableness of the fee request. *See Murrco*, 800 S.W.2d at 606 (trier may consider the amount of time normally required to complete tasks); *see also Parks Equip. Co. v. Southeast Equip. Co., Inc.*, 817 F.2d 340, 344

(5th Cir.1987) (noting that court should consider the amount sought in relation to the complexity of the issues involved).

**9.** These litigation tasks were performed roughly from June 1994 to June 1996 and were the subject of the first motion for attorney's fees filed in this Court during the pendency of the appeal to the Third Circuit.

**10.** Billing entries relating to counsels' work on appeal related matters appear roughly from July 1996 to May 1997.

**11.** Billing entries relating to the preparation and filing of the first attorney's fee motion occurred roughly from June through August 1996. Billing entries relating to the second fee application occurred from June through September 1997.

**12.** We note that some entries appear to relate to two different litigation tasks, i.e., work on summary judgment motion and discovery-related issues. We have separated the time spent on each task where such information is provided. If there is no way to determine the division of time spent from the description appended to a particular entry, but it is clear from the description that the majority of the effort expended related to the preparation of the summary judgment motion, we included that entire entry in the summary judgment preparation category. Otherwise, where the description associated with a billing entry is ambiguous, we have excluded that billing entry from our calculations.

logged approximately 328.5 hours worth of work related to discovery in this case. Typical entries describing tasks falling under this heading include but are not limited to matters such as preparation and review of any discovery materials (initial discovery and otherwise), preparing discovery requests or responses, conferences relating to discovery matters (with adversary, other members of the litigation team or the Court), and deposition scheduling and preparation. By our calculations, G & C logged approximately 328.5 hours and billed $27,272.23 to EDS in that connection.

What is readily apparent from a review of the billing records is that G & C included in its submissions all discovery-related entries in this case. Such an approach, however, is patently inappropriate. *See Stewart Title*, 822 S.W.2d at 11. EDS is the prevailing party only with respect to its successful summary judgment motion. While we recognize that some discovery was necessary in order to facilitate the summary judgment motion, EDS has not met its burden of demonstrating that the entire amount billed for discovery work related to the successful summary judgment motion. Moreover, EDS has not provided the Court with sufficient evidence from which we may segregate the discovery-related entries and award an amount that reflects discovery work which was necessary for the successful summary judgment motion. Accordingly, EDS is not entitled to an attorney's fee award which includes time spent on this litigation task.

### 2. *Summary Judgment*

 From February 1995 to June 1996, G & C spent approximately 243.75 hours and charged $20,991.45 for work related to EDS's motion for summary judgment. Typical billing entries for such work include descriptions such as: performing legal research, discussing strategy, drafting the motion and reply briefs, gathering and organizing evidentiary materials, filing the motion, calling the court for case status update, and discussing status of the motion with local counsel. EDS argued in the motion that plaintiff's Complaint was barred by the one-year statute of limitations which was provided in the contract between the parties. (*See* Br. in Supp. of EDS's Mot. for Summ. J. at 10.) This Court agreed. (Mem. & Order dated 5–31–96.)

 It is clear that we may consider the nature and complexity of the legal issues in determining the reasonableness of the fee request. *See Parks Equip.*, 817 F.2d at 344 (noting that court should consider the amount sought in relation to the complexity of the issues involved); *Murrco Agency*, 800 S.W.2d at 606. We therefore find it appropriate to consider the complexity of the dispositive issue in our summary judgment opinion, as well as the fact that this matter was resolved by motion rather than through a trial on the merits. Our review of our Memorandum and Order as well as the parties' submissions on this point lead us to conclude that the expenditure of 243.75 hours in legal work (by lead counsel alone) is excessive in light of the relatively simple legal and factual basis for the motion. We therefore find it appropriate to reduce the fee award pertaining to this litigation task by 50%. We find that $10,495.75 is a reasonable fee for work performed on this aspect of the litigation.

### 3. *Appeal to the Third Circuit*

 GSAP filed an appeal of our May 31, 1996 Memorandum and Order to the Third Circuit on June 24, 1996. The appeal was subsequently dismissed for lack of appellate jurisdiction on June 6, 1997. However, prior to dismissal, G & C spent extensive time litigating the matter before the Third Circuit. Our Court of Appeals also required the parties to attend a mediation conference before Honorable Leonard I. Garth, United States Circuit Judge, in connection with the appeal. By our calculations, from June 1996 to May 1997, G & C spent a total of 241.4 hours litigating the appeal and participating in mediation before the Third Circuit. G & C billed a total of $33,818.21 in attorney's fees in connection with its representation of EDS in that capacity.

We find that the facts of this case do not require an adjustment of the amount awarded in connection with this litigation task. First, it is clear that the appeal required not only extensive appellate briefing, but also

preparation and attendance at mediation prior to the disposition of the appeal. The time devoted to these tasks by lead counsel does not appear excessive in light of the myriad of issues involved.

We also find it significant that plaintiff clearly filed an interlocutory appeal before the Court of Appeals, as EDS's counterclaim against GSAP for breach of contract and unjust enrichment was pending in this Court. GSAP's appeal was subsequently dismissed by the circuit for lack of jurisdiction. GSAP's premature appeal caused EDS to incur unnecessary legal fees in connection with litigating the matter before the Third Circuit. Accordingly, we find the amount claimed in this connection to be reasonable under the circumstances.

### 4. Attorney's Fees Applications

 From June 1996 to August 1996, G & C worked 18.25 hours preparing EDS's first motion for attorney's fees and costs. G & C billed EDS $2,901.25 for fees charged in connection with the 1996 fee application before this Court. We denied the first fee application without prejudice because of the pending appeal to the Third Circuit. (Order dated 3/27/97.)

EDS filed a second motion for attorney's fees and costs on July 14, 1997. From June to September 1997, G & C spent 9.55 hours on its renewed motion, and charged EDS $1,680.25 in fees. Thus, based upon the submissions to date, the total amount of fees charged by G & C with respect to the prosecution of the fee applications is $4,581.50.

A review of both fee applications and the submissions in support thereof leads us to the conclusion that the amount assessed in connection with these motions is unreasonable under the circumstances. A comparison of the legal papers produced with the time spent producing them reveals that 27.8 hours was clearly excessive. The very fact that this Court had to reconstruct the billing records submitted, separate the matters by litigation task, and develop a system of analysis

attests to this fact. Accordingly, we will reduce the amount recoverable for this litigation task by one half, and award $2,290.75 in this connection.

### 5. Costs

 By our calculations, from June 1994 to December 1997, G & C billed $12,619.57 in costs to EDS. Our review of the billing records confirms that EDS included in the total fee request an amount which reflected all costs incurred during the relevant time period. The costs incurred include amounts expended for necessities such as: (1) photocopying; (2) computerized legal research; (3) courier fee; (4) long-distance telephone calls; (5) postage; and (6) telecopying. Also included in EDS's request for costs are certain travel expenses from Texas to New Jersey for depositions and mediation before the Third Circuit. (See Blackstone Certif., Ex. 1, billing record dated 6–8–95 at "Itemized Disbursement Bill;" id., Ex. 1, billing record dated 9–11–95; id. Ex. 2, billing record dated 11–23–96.) [13]

The Court is certain that some of the costs were generated as a result of work performed on matters relating to the dismissal of the Complaint against EDS. However, the structure of the billing records before us prevents the Court from ascertaining which costs were incurred in furtherance of the successful summary judgment motion. This observation requires a reduction in the costs recoverable. Similarly, we find that the charges for travel expenses are unreasonable in light of the fact that EDS retained local counsel who appears from the billing records to have taken an active role in this litigation. Accordingly, we will reduce the amount of costs awarded by 75%, such that EDS may recover a total of $3,154.90 for the costs incurred in this matter.

### A. Jamieson, Moore, Peskin & Spicer [14]

### 1. Discovery–Related Matters

JMP & S spent 52.9 hours working on discovery-related matters, including tasks

---

13. These expenses include car rental, airfare, meals, lodging, mileage, and parking. (Black-

stone Certif., Ex. 1, billing record dated 6–8–95; id., Ex. 1, billing record dated 9–11–95.)

14. We reject at the outset GSAP's argument that

such as document review, preparation of discovery materials, drafting discovery motions, attending conferences, and deposition preparation. JMP & S billed EDS $7,041.30 in that connection. We decline to award EDS any fees relating to this litigation task for the same reasons expressed above in our discussion of G & C's discovery-related billing entries. *See Stewart Title,* 822 S.W.2d at 11.

### 2. Summary Judgment

██ JMP & S spent 55.25 hours researching, preparing, drafting, discussing and filing EDS's motion for summary judgment which we granted on May 31, 1996. In that connection, JMP & S billed EDS 6,873.75 in legal fees.

The Court finds that 55.25 hours is an excessive period of time to spend on the motion for summary judgment. Moreover, when we compared the billing records from G & C to those submitted by JMP & S, it was apparent that there was some duplication of efforts. (*Compare* Preziosi Certif., Ex. A, billing records for Aug. & Sept. 1995 *with* Blackstone Certif., Ex. 1, billing records for Aug. & Sept. 1995.) Accordingly, we will reduce the amount recoverable for this litigation task by one half, and award $3,436.88 in legal fees in this connection.

### 3. Appeal to the Third Circuit

██ JMP & S spent approximately 23.7 hours researching, drafting and filing its brief and appendix before the Third Circuit. The amount charged in relation to work on the appeal is $3,152.00. GSAP points out that JMP & S also included in its fee calculation time spent researching local appellate rules, and also more tangential matters such as the background of the members of the Third Circuit panel hearing the appeal and this Court's reversal rates. (*See, e.g.,* Preziosi Certif., Ex. A, billing entries dated 9–24–96, 10–1–96, 10–15–96, 10–16–96, 4–30–

97.) GSAP argues that these amounts should be excluded from the fee award, as local counsel should be familiar with the local rules, and information concerning judges' backgrounds and reversal rates is unnecessary.

Initially, we reject GSAP's argument that EDS cannot be reimbursed for time spent by local counsel researching various local rules of this District and/or the Third Circuit. To the contrary, we think that it would be unreasonable and unrealistic to expect that an attorney would not consult the local rules, even if the attorney is a member of the bar of this state. However, we find GSAP's other objection justified. We conclude that EDS is not entitled to be reimbursed for the entire amount of fees generated in connection with JMP & S's work on this litigation task. Put simply, requiring GSAP to reimburse EDS for time spent researching this Court's reversal rates and the backgrounds of certain Third Circuit judges is beyond the realm of reasonableness. Thus, it is appropriate to subtract from $3,152.00 any amounts charged in connection with researching background information and reversal rates. The amount to be deducted is $519.00, leaving $2,633.00 as the total amount recoverable in connection with JMP & S's performance of this litigation task.

### 4. Attorney's Fee Applications

██ By our calculations, JMP & S spent 32.0 hours preparing both fee applications before this Court, and charged $3,939.50 in legal fees in that connection. The Court has reviewed the relevant billing records, certifications and supportive materials. In short, we find that 32.0 hours is clearly excessive in light of the product produced. Accordingly, we will reduce the amount recoverable by one half, permitting a recovery of $1,969.75 in relation to this litigation task.

"it is fundamentally unfair for the plaintiff to be responsible to pay for both Texas and New Jersey counsel." (*See* GSAP's Ltr. Br. at 4.) We see no reason under the prevailing language in the contract to limit recovery of fees and costs to lead counsel. Moreover, we do not think it is unreasonable to require plaintiff to reimburse EDS for reasonable local counsel fees in light of its deci-

sion to litigate this matter in New Jersey when defendant's lead counsel is located in Texas. Plaintiff has cited no authority, and we are aware of none, that would bar EDS from recovering at least some of the fees incurred in connection with JMP & S's services as local counsel in this matter.

388

5. *Costs*

 JMP & S incurred $477.73 in costs from June 1994 to December 1997 in litigating this case. It is clear, however, that those costs relate to fees which were incurred throughout the course of the entire litigation of this matter in this Court and the Third Circuit. Obviously, the billing records submitted do not itemize costs according to litigation task. Therefore, we find it appropriate to reduce the amount of costs recoverable by 75%, such that EDS will be reimbursed $119.43 for the costs associated with JMP & S's representation from June 1994 to December 1997.

## CONCLUSION

For the foregoing reasons, we will grant EDS's motion for attorney's fees and costs, as it is clear that pursuant to the parties' 1991 agreement, EDS is entitled to an award of reasonable fees and costs in connection with our May 31, 1996 dismissal of plaintiff's breach of warranty claim against defendant. In that connection, we have thoroughly reviewed the billing records submitted, along with any certifications of counsel and other supportive materials. We find that EDS is entitled to be reimbursed for the following fees and costs generated in this matter:

Goodwin & Carlton, P.C.

| | |
|---|---|
| Discovery-related fees: | $0 |
| Summary Judgment preparation fees: | $10,495.75 |
| Third Circuit appeal fees: | $33,818.21 |
| Attorney's Fee application fees: | $2,290.75 |
| Costs recoverable: | $3,154.90 |
| Total G & C fees: | $49,759.61 |

Jamieson, Moore, Peskin & Spicer

| | |
|---|---|
| Discovery-related fees: | $0 |
| Summary Judgment preparation fees: | $3,436.88 |
| Third Circuit appeal fees: | $2,633.00 |
| Attorney's Fee application fees: | $1,969.75 |
| Costs recoverable: | $119.43 |
| Total JMP & S fees: | $8,159.06 |
| Total Amount of Fees and Costs Recoverable | $57,918.67 |

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

For the reasons expressed in the accompanying Memorandum

Opinion,

**IT IS** on this day of December, 1998 **ORDERED** that the motion for attorney's fees be and hereby is **GRANTED**; and

**IT IS FURTHER ORDERED** that defendant EDS be awarded $57,918.67 in attorney's fees and costs on this motion.